## NEWMAN v. GOZA.

Where the transcript of a record from a court of another State, commences as follows : " Pleas before the Hon. G. C., Judge of the First Judicial District of the State of M., at a Circuit Court begun and held at the court-house in and for C. county," &c.; and the clerk, in his certificate, describes himself as Clerk of the Circuit Court for the county of C.; and the judge, in a certificate commencing " State of M., C. county," styles himself Judge of the First Judicial District of said State, an objection that the certificate of the judge does not show that the county of C. was within his circuit, will be disregarded.

In the absence of any suggestion that the certificate of a judge, authenticating the transcript of a record from a court of another State, and attached thereto, at the foot of the clerk's certificate, by a wafer, was improperly obtained, it will be presumed that the judge did not violate his duty, and that he affixed the certificate himself to the transcript; nor will this presumption be affected by the fact that there was room enough to have written the judge's certificate on the same sheet on which the clerk's certificate was written.

It is no defence to an action against the maker of a note, by the last endorser, who had paid a part of its amount, after protest, to the holder, that the defendant made the note for the accommodation of a previous endorser, who had put it in circulation, where there is no proof that the relations between the latter and the maker were known to plaintiff. In the absence of such proof the defendant must be considered to have endorsed the note upon the faith of the antecedent names.

The testimony of a witness that the last endorser of a note, who had been compelled to pay its amount, told him that he looked only to a previous endorser, and knew nothing of the maker in the matter, is insufficient to discharge the latter. Per Curiam : Such loose declarations, made without consideration to a third person, cannot be treated as an abandonment of a lawful claim.

Where the endorser of a note, after protest for non-payment by the maker, pays a part of its amount, he may recover such partial payments from the maker.

Where the maker of a protested promissory note, in settling certain partnership transactions with an endorser, transfers property to the latter on his agreeing to pay the amount of the note to the holder, it will amount to an acknowledgment of the debt by the maker, interrupting the prescription running in his favor, and may be taken advantage of by another endorser, who had been compelled to pay a part of the amount of the note. C. C. 3486.

Questions of prescription must be determined by the law of the forum.

An endorser of a bill or note, against whom an action has been brought by the endorsee, cannot recover from the maker or acceptor the costs of the action, unless in case of an express and collateral contract of indemnity.

APPEAL from the District Court of Carroll, *Curry*, J. The facts of this case are stated in the opinion of the court, *infrá*.

*Short, Prentiss* and *Finney*, for the appellant. The payment by plaintiff on the judgment against him as last endorser, was in law a payment for the use of defendant, out of which arises a legal obligation on his part to refund ; plaintiff has a right to enforce this obligation, and is not obliged to sue on the note, but may use it in evidence to sustain his action for money paid to defendant's use. This obligation to refund arose in Mississippi, where the payment, out of which it originated, was made. It is to be governed by the *lex loci contractus*, which is the common law.

It is settled in the United States, as well as England, that the payment of the whole or part of a note or bill by an endorser, produces, by mere operation of law, a perfect obligation on the part of the maker or acceptor to refund. This doctrine is founded on the general principle that, whenever a man is compelled to pay the debt of another, such payment is considered as made for the use and at the request of the primary debtor, and the law raises an implied promise on his part to refund. An endorser who has paid part of a note may sue the maker upon this implied promise; and afterwards, upon further payment, sue again.

If he has paid the whole note, he is still not bound to rely upon the express contract, but may rely upon the implied one, arising out of his payment of the note, and sue for money paid to the use of the maker. In the case of *Butler* v. *Wright*, 20 John, R. 367, it was decided that a second endorser, who had paid part of a note, could maintain an action against a previous endorser, for money paid to his use, provided the statute of limitations had not attached at the time of payment. The same case was affirmed in 2 Wend. 369, and re-affirmed in *Wright* v. *Butler*, 6 Wend. 284. That an endorser who has paid a bill or note may maintain his action against the maker, for money paid to his use, without resorting to an action on the instrument, is also fully settled in *Pierce* v. *Crafts*, 12 John, R. 90, and in *Wild* v. *Fisher*, 4 Pick. 421. In *Cole* v. *Cushing*, 8 Pick. 48, the principle was recognised and applied, although it appeared in evidence that the maker signed the note merely for the accommodation of the payee. The doctrine established by the foregoing cases in New York and Massachusetts, is fully recognised in England. In the case of *Pownal* v. *Ferrand*, 6 Barn. & Cress. 439 (13 Eng. Com. Law R. 230), it was ruled : " That the endorser of a bill being sued, and having paid part of the sum mentioned therein, might recover the same from the acceptor in an action for money paid to his use." Mr. Justice *Holroyd* put the case upon the same footing with that of a surety. Vide also Bailey on Bills, 390. In the case now before the court, the plaintiff did not pay the whole of the note, and had no right to sue on the note, for he had only paid a part of it. An action for money paid was the proper proceeding. Upon his payment, the law raised an implied obligation on the part of defendant to reimburse him. That obligation did not come into existence till the payment was made, to wit, July, 1843. Of course, prescription could not commence running before the cause of action arose ; and the plea was improperly sustained.

Prescription was interrupted in 1840, by defendant's acknowledgment of the debt. It will be perceived that the prescription of five years was not completed in 1840 ; and, if then interrupted, it had not matured at the commencement of this suit.

The transfer by defendant to *J. H. Moore & Co.* of property to the amount of the debt, and his arrangement that they should pay it for him, is sufficient to interrupt prescription. Civil Code, art. 3486. *Carraby* v. *Navarre*, 3 La. 263. *Shiff* v. *Hertzog*, 12 La. 455. *Rivière* v. *Spencer*, 2 Mart. 82. It is not necessary to prove a direct acknowledgment, but it may be inferred from facts without words. 1 Harris & Gill, 204. *Whitney* v. *Bigelow*, 4 Pick. 110. 9 Pick. 488. 8 Wend. 600. 13 Wend. 267. Bailey on Bills, 102, 349, 622.

Nor need the acknowledgment be made to the creditor himself. 1 Esp. 435. 4 Esp. 46. 3 B. & A. 141. *Oliver* v. *Grey*, 1 Harris & Gill, 204. *Whitney* v. *Bigelow*, 4 Pick. 110. *St. John* v. *Garrow*, 4 Porter, 223. In *Dean* v. *Hewit*, 5 Wend. 257, the promise relied on was made to the payee of the note, and was held to enure to the benefit of the holder. Pothier makes a distinction between acknowledgments made before, and after prescription has been accomplished. In the former case very slight ones suffice to interrupt prescription, and they need not be made to the creditor, nor with his knowledge ; while in the latter case, to revive a debt already barred, the acknowledgment must be made to the creditor himself. The mere registry of the debt among the charges, in the inventory of the effects of the debtor, though not made with the concurrence of the creditor, is an act which recognises the debt and interrupts prescription. Pothier on Obligations, part. 3, ch. 8, art. 2, ss. 3, p. 457. English translation.

Until he satisfied the judgment in 1843, plaintiff had no right to sue for money paid, nor on the note. The note belonged to the Planters' Bank. Plaintiff could not force the bank to sue the maker, nor was he entitled to an action himself.

The holder of a note, who has neglected to sue the maker, cannot avoid the plea of prescription on the ground that he instituted suit in due time against one or more of the endorsers, because he had all the time a right of action against the maker, and where the right of action exists prescription runs. The former Supreme Court decided in *Allain* v. *Longer*, 4 La. 152, that suit against one of the parties to a note interrupted prescription as to all. This decision was based upon the assumption that all the parties to a note are bound *in solido ;* but was very properly reconsidered, and the principle reversed in the case of *Jacobs* v. *Williams*, 12 Rob. 183. The latter case was one in which the holder sued,

and prescription attached, because the right of action had always existed in him. But how is it with an endorser? He is entitled to expect that the maker has paid, or will pay; in other words, that he will fulfill his obligation. Suppose the holder does not apply to the endorser until the very last moment of prescription, it would be injustice to say that the maker should be entitled to plead against the endorser the same prescription which he was entitled to against the holder. It is the holder's own fault that he did not sue the maker in time, but it is not the fault of the endorser; he could not sue till he had paid; and, as between him and the maker, he was not bound to pay, but had a right to expect that the maker would pay, the rule ought to be that prescription shall not run in favor of the maker against an endorser, but from the time the endorser has taken up the note or bill. "Indeed the idea, observes *Judge Porter*, in the case of *Hernandez* v. *Montgomery*, 2 Mart. N. S. 433, of a man losing his right by not bringing an action which it was impossible he could bring, involves such a contradiction in itself, and leads to such monstrous injustice, that nothing short of the most positive law could authorise any tribunal to sanction such a doctrine."

*Dupuy*, for the defendant.

*J. Dunlap*, on the same side. 1. The note sued on matured on the 5th March, 1837, and this suit was first instituted on the 12th day of February, 1844.

2. The note was made by defendant for the benefit of *Moore & Co.*, and without any privity with any of the endorsers, especially with plaintiff, who declared, when advised to pay the note and sue *Goza*, that he endorsed for the benefit of *Moore & Co.*, and looked to them only.

3. The payment by plaintiff of the amount of the note, was not made within five years of the institution of this suit.

4. There is no evidence of any promise or acknowledgment of the note, on the part of *Goza*. The settlement of account between him and *Moore & Co.*, in which the credit to *Goza*, caused by *Moore & Co.*'s using the note, may have been an item, is not evidence of such a promise. The prescription of five years, pleaded under our Code, art. 3505, runs against plaintiffs wherever they reside, and in favor of defendants wherever they reside. C. C. 3487, 2218. 15 La. 145. Story's Conflict. s, 576. The prescription of our law is a discharge, an extinguishment of the debt. C. C. arts. 3421, 3422. The limitation statutes of common law States have no such effect. Joynes' Essay, p. 15. The acknowledgment of the debt, if specifically made by *Goza* to *Moore & Co.*, would not avail the plaintiffs, according to art. 3486 of the Code, which declares that, "prescription ceases likewise to run whenever the debtor or possessor makes acknowledgment of the right of the person whose title they prescribed." It is said that *Moore* received property to pay the debt to the bank. How could this, if true, be called an acknowledgment of the right of *Newman* to recover of him the amount again? *Conway* v. *Williams*, 10 La. 569. *Moore* v. *Bank of Columbia*, 6 Peters, p. 90. As to the form of the action, as for money paid by plaintiff to the use of defendant—no such action will lie in Louisiana by an endorser against the maker of a note, unless the payment be made at the request of the party.

5. The payment by plaintiff was made, if at all, more than five years after the maturity of the note, when the note or debt was extinguished by the laws of Louisiana, where defendant resided. C. C. 3421.

6. The record introduced to prove payment was improperly received. The certificate does not show that Claiborne is in the district over which the judge presided, nor that he was the presiding, or only, judge. The statement of the clerk, in the beginning of the transcript, was made six years before the certificate of the judge. 2 Mart. N. S. 497.

7. If payment was made by plaintiff, it was made in the notes of the Planters' Bank, then worth only fifty cents in the dollar.

The judgment of the court was pronounced by

SLIDELL, J. The plaintiff was the last endorser of a promissory note for the sum of $3,805 27, made by the defendant, *George N. Goza*, in the State of Mississippi, dated 5th May, 1836, and payable ten months after date, to the order of and endorsed by *Aaron Goza*, also by *Joseph H. Moore & Co.*, and *Moore*,

*Burroughs & Co.* The note matured and was protested on the 8th March, 1837, and in the same year suit was brought by the Planters' Bank, the holder, against . *Newman ;* judgment was obtained, and upon execution various amounts, in partial payment, were collected from him, the reimbursement of which he claims of *Goza.* The residue was paid to the holder by *Moore, Burroughs & Co.* The note was offered in evidence, together with the protest, and the record of the suit in Mississippi.

Our first enquiry must be directed to a bill of exceptions, taken by the defendant to the admission in evidence of an authenticated transcript of the record of the suit in Mississippi. The objections were: first, that the judge's certificate did not show that the county of Claiborne was within the circuit of said judge ; and secondly, "because the certificate was not upon the same piece of paper with the clerk's certificate, although there was ample room for the same, which will appear from the original transcript sent up." The record commences as follows: "Pleas before the Honorable George Coalter, Judge of the First Judicial District of the State of Mississippi, at a Circuit Court begun and held at the court-house in and for Claiborne county, on the fourth monday," &c. The clerk, in his certificate, describes himself as clerk of the Circuit Court for the county of Claiborne. The judge's certificate is headed " State of Mississippi, Claiborne county," and he styles himself therein judge of the First Judicial District of said State. In view of all these circumstances, the objection is plainly untenable. The next objection seems to us equally so. The judge's certificate is fastened to the transcript, at the foot of the clerk's, by a wafer. In the absence of any suggestion, or offer of proof, that the judge's certificate was improperly obtained, we must presume that he did not violate his judicial duty, and that he affixed this certificate himself to the document before us.

On the merits several grounds of defence have been urged, which we shall proceed to consider. It is no defence against *Newman,* that *Goza* made the note for the accommodation of *J. H. Moore & Co.* The relations between *Goza* and *Moore & Co.,* are not proved to have been known to *Newman.* When *Newman* endorsed the note for the accommodation of *Moore & Co.,* who put the note in circulation, he must be considered as having done so upon the faith and protection of all the antecedent names; and the statement of one of the defendant's witnesses, that *Newman,* in a conversation with the witness after protest, told him that he looked only to *Moore & Co.,* and knew nothing of *Goza* in the matter, even if admissible under the pleadings, is insufficient to establish a discharge of the defendant's liability. Such loose declarations, made without consideration to a third person, cannot be treated as an abandonment of a lawful claim.

Although the payments made by *Newman* were partial, the maker is bound from the nature of the contract and his primary liability to reimburse them. This point of the commercial law is well settled by high authority. The case is assimilated to that of principal and surety, where the request to pay is implied from the legal liability of the latter incurred for the benefit of the former. See *Wright* v. *Butler,* 6 Wendell, 289, and the opinion of Lord Tenterden, in 6 Barnwell & Creswell, 439.

. The defence of prescription is set up. We deem it unnecessary to consider the question argued by counsel, whether prescription begins to run in such a case from the date of the payment by the endorser. It is shown by testimony, offered by the defendant himself, that, within five years prior to his citation

in this cause, to wit, in the early part of the year 1840, he acknowledged his liability upon the note. The facts shown are that, in a settlement of certain partnership transactions between *Goza* and *Moore & Co.*, the latter received from *Goza* property to the value of the debt to the Planters' Bank, and agreed on their part to take up the debt to the bank. This proves an acknowledgment by *Goza*, in the year 1840, of his liability upon the note to the holder, and this action was brought in 1844. It is unnecessary to enquire what would be the effect of such an acknowledgment, under the statute of limitations in Mississippi. Questions of prescription affect the remedy, and must be determined by the law of the forum. Story's Conflict of Laws, § 576. *Union Cotton Manufactory* v. *Lobdell*, 7 Mart. N. S. 108. Prescription, says our Code, art. 3486, ceases likewise to run whenever the debtor, or possessor, makes an acknowledgment of the right of the person whose title they prescribe.

" Par quelque acte que le débiteur reconnaisse la dette, cet acte interrompt le temps de la préscription, soit que cet acte soit passé avec le créancier, soit qu'il soit passé sans lui: Par exemple, si, dans l'inventaire des biens du débiteur, la dette est comprise parmi le passif, cet inventaire, quoiqu'il ne soit pas fait avec le créancier, est un acte recognitif de la dette, qui interrompt le temp de la préscription." Pothier, Traité des Obligations, part 3, chap. 8, art. 2, § 4. See also Merlin's Rep. *verbo* Interruption de Préscription, no. 8.

The plaintiff has incurred heavy expenses by the suit against him in the form of costs, and these form part of his claim. But these he is not entitled to recover. His claim must be confined to the amount collected on execution, which actually went to the payment of the note, with such interest from the dates of payment as the maker was bound for upon the note. It is well settled that an endorser of a bill or note having had an action brought against him by the endorser, is not entitled to recover from the acceptor or maker the costs incurred in such action, unless there was an express and collateral contract of indemnity.

It is therefore decreed that the judgment of the court below be reversed; and it is further decreed that the plaintiff recover of the defendant the sum of $5,612 73, with interest at the rate of eight per cent per annum on the sum of $1,243 39, part thereof, from the 22d May, 1843, till paid; and interest at the like rate on the sum of $4,369 34, other part thereof, from the 3d day of July, 1843, till paid, and costs in both courts.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## SAME CASE—ON A RE-HEARING.

A judicial record from another State is sufficiently authenticated, when, by a reference to the record itself, taken in connection with the certificate of the judge, there is evidence to show that the person by whom the certificate was given was the judge of the court from which the record was certified. *Per Curiam:* It is not necessary that the judge should repeat in his certificate what his very act implies.

*Prentiss* and *Finney*, for the appellant. The only question submitted for argument on the re-hearing in this case is, the sufficiency of the judge's certificate authenticating the record of the proceedings in Mississippi, upon which the writ was founded. The act of Congress requires that, the record from another State shall be certified by the " judge, chief justice, or presiding ma-

gistrate." In the present case, the judge describes himself as "judge of the First Judicial District" of said State, &c. It is contended by the defendant, that the certificate must contain *intrinsic evidence*, that the judge was the judge of the court from whence the record is certified, and that reference cannot be had to the record to assist or explain the certificate. The case of *Kirkland* v. *Smith*, 2 Mart. N. S. 497, seems to go that length, but that case has gone beyond both authority and principle. In the case of *Mudd* v. *Beauchamp*, Littell's Selected Cases, 142, the Supreme Court of Kentucky decided that, "it is not necessary that the president or presiding judge should give himself such title in the certificate; if the record shows he was so, it is sufficient." In the case now before the court, the certificate shows that *George Coalter* was then judge of the First Judicial District"—not a judge, or one of the judges, but *the* judge—the sole judge. The body of the record shows that the Circuit Court of Claiborne, is in, and a portion of, the First Judicial District. This is conclusive that the judge who signed as judge—as the judge of the First Judicial District—was, at the time, judge of the court from whence the record came.

*J. Dunlap*, for the defendant. The case of *Kirkland* v. *Smith*, requires *intrinsic evidence* in the certificate of *all the requisites of the act of Congress*. This is admitted by plaintiff's counsel, but they contend that Judge Martin went too far. We quote in support of *Kirkland* v. *Smith*, the authority of Greenleaf on Evidence, 1 vol. p. 552, § 506, who lays down the same rule, and endorses the decision of Judge Martin.

Plaintiff relies upon the case of *Mudd* v. *Beauchamp*. That case, even if authority, is in our favor. There the *record* certified showed that, " *John Marshall Gault* was chief justice." The *certificate* read: " *The said John Marshall Gault*, chief justice." This certificate contained *intrinsic evidence ;* for " *the said John Marshall Gault*," means the judge named in *the record.* But the case of *Mudd* v. *Beauchamp*, was decided in 1812. In 1814, in the case of *Stephens* v. *Bannister*, 3 Bibb, 369, there were certificates of two judges. One says he is " the judge that presided ;" the other calls himself, " senior judge of the courts of South Carolina." The record offered in evidence was *rejected*. In *Sampson* v. *Overton*, 4 Bibb, 499, decided in 1816, the same strictness in pursuing the act of Congress was required. These cases are later decisions of the court which decided the case relied on by plaintiff, and must be considered as overruling that case.

The opinion of the court on the re-hearing was pronounced by

EUSTIS, C. J. We granted a re-hearing in this case for the purpose of further examination of the subject, inasmuch as our decision conflicts with the rule laid down in the case of *Kirkland* v. *Smith*, 2 Mart. N. S. 497.

We do not understand that that case has been considered as an authority, settling the question which it determines. It has been cited in the work of Mr. Greenleaf, as a decision made, but only as such. We consider that some weight must be given to the authority of a judge when he performs a judicial act; and that when, by a reference to the record itself, taken with his certificate, the proceedings are in point of form complete, there can be no necessity for the judge's repeating in his certificate what his very act implies. The repetition in the certificate would add nothing to it. His act is under the sanction of his oath, and the responsibility of his official station.

The case of *Mudd* v. *Beauchamp*, Littell's Selected Cases, 142, we think, lays down the correct rule on this subject.

The judgment of the court therefore remains unchanged.