No. 12,925.

W. G. DUNNING VS. WALTER O. WEST.

SYLLABUS.

All persons not expressly disqualified may testify. Effect may be given to a
statute repealing a disqualifying statute immediately after it becomes a
law.

When the law abolishing the disqualification of certain witnesses was enacted
(Statute No. 190, enacted in 1898), it went into effect and applies to pend-
ing cases. Hennen's Digest, Vol. 1, p. 789, §5.

Justice between the parties demands that the case be remanded.

ON APPEAL from the Civil District Court for the Parish of
Orleans. *King, J.*

*D. M. Sholars (Benjamin Rice Forman,* of Counsel,) for Plaintiff
and Appellant.

*Horace E. Upton* and *Robert J. Maloney* for Defendant, Appellee.

Argued and submitted December 9, 1898.
Opinion handed down January 23, 1899.
Rehearing refused, reasons assigned, March 7, 1899.

BREAUX, J. Plaintiff sued the defendant for damages in the sum
of twenty-five thousand dollars, caused by the negligence and want of
skill of defendant's employee, who, as a dentist, extracted two teeth
of plaintiff's wife.

Plaintiff's petition sets forth that, on calling at defendant's office,
she was received by him. She complained of an aching tooth. The
defendant, without having examined her teeth, placed her under the
care of an assistant. Thereupon, he, plaintiff avers, the assistant,
without any examination or diagnosis to make certain that the
pulling of a tooth was necessary, extracted two of the teeth of her
lower jaw.

It was charged that it was wilful negligence and malpractice; that
the pulling of her teeth was unnecessary, and that they were pulled in
an awkward and unskillful manner. That a few minutes after,

believing that her jaw bone was fractured, she returned to his office. and earnestly complained of. her affliction, but the assistant, to whom she complained, assured her that she was mistaken; that from the time the teeth were extracted she suffered pain in the bone from which the teeth had been extracted, and twelve days after the piece of the jaw bone had been detached in extracting the teeth; that spicula worked through her gums and was· taken from her mouth by her; that this detached bone in the gums, which defendant's assistant had failed to take out, .caused inflamation of the periosteum, which inflamation extended to the remaining teeth of the lower jaw. That other teeth were extracted under the advice of a skillful dentist and physicians, without affording her any relief.

It is contended by plaintiff the injury was occasioned by the unskillfulness of defendant's assistant, which he alleges resulted in necrosis, or decay, of the lower jaw, for which she had to undergo a most painful operation, which resulted, he avers, in disclosing not only periostitis, but also the presence of a lower portion of the detached jaw bone brought about by the unskillful extraction of a tooth; that a piece of the jaw bone had to be removed, and that it broke near the centre, and to preserve its continuity the ends were tied with silver wire, and the pain and suffering have undermined her health, and he avers -she is a physical wreck and has a permanent scar on her face.

The testimony elicited, on the part of the defense, shows that she was riding a bicycle on St. Charles street about two weeks later, and that a piece of tooth, or spicula of the bone, came out of her gum.

Two weeks after this first ride she fell from her bicycle while again riding.

The defendant pleaded a general denial.

The evidence shows that previous to the 16th of October, 1896, Mrs. Dunning's health was very good, and that she has never been in a healthy condition since, and still suffers.

The physician found, a short time after the teeth had been extracted, that she was suffering from diseases of the jaw bone, shown by the signs of inflammatory disturbance about the jaw. One of the witnesses, who had been the physician of plaintiff's wife, testified that he found no other cause for the trouble except the extraction of the teeth, and added, that he did not know whether they were pulled unskillfully or skillfully, and another of plaintiff's witnesses, a physi-

·cian, also, testified that it was a possibility that her illness was exclusively the result of unskillful extraction of the teeth.

The defendant also examined witnesses, among them a well known dentist with an experience of fifty` years, who said that all dentists who extract many teeth know that it sometimes happens that in extracting a tooth, a portion of the alveola process is broken, especially in pulling, that a little fracture is of no importance; it is a common occurrence; that it would be impossible for a physician, even a dentist, to tell three or four months after teeth had been extracted, whether they have been skillfully or improperly extracted; that, under ordinary conditions, a skillful dentist will not fracture the jaw bone in pulling a tooth, with the exception of possibly a small fracture of the socket, or alveolus, at the curvical part of the tooth; that if such an accident should happen, as the breaking off of a part of the jaw bone, ordinary prudence would suggest that the bone should be immediately removed, but that he had never heard of any dentist breaking a jaw bone in extracting an inferior bicusped. The two lower bicuspeds were the teeth extracted.

In answer to a question, this witness testified that if the lower bicuspeds had been extracted with the roots attached, it would be very good evidence of a careful and skillful extraction of those teeth.

Another dentist, an expert witness, testified that it is impossible almost to extract a tooth without some light fracture of the alveola process. He expressed the opinion that even sometimes after a tooth has been extracted, it is possible to tell whether the teeth have been properly or improperly extracted.

The dentist by whom the teeth were extracted, and the defendant, both testified, denying the charge brought by plaintiff. The former was a graduate of a dental college. He is a dentist since 1890, and has pulled many teeth, as an employee of the defendant, and prior to his employment by him he was engaged in work of that profession. In matter of the facts, we note that the teeth were pulled out October 16, 1896. Some ten or fifteen days after she called on another dentist and had teeth extracted. She consulted her physician on the first of November, 1896. She consulted a specialist, first, in the latter part of October, and again in January following. About the 9th of .February, 1897, a surgical operation was performed.

The District Court rejected plaintiff's demand.

From the judgment the plaintiff prosecutes the appeal.

The first objection now before us for determination comes on a bill of exceptions to the court's ruling excluding the evidence of Mrs. Dunning, for the reason that the suit was brought in the name of the husband alone, and that if any damages should be recovered they would fall into the community.

The bill sets forth that the witness was offered to prove her agency, that she made the contract, as the representative of her husband, for services to her personally; and that she being alone cognizant of what she did, and what she suffered, she is a necessary witness within the rule of competency of witnesses where they are the only persons having knowledge of the fact. We will, later, refer to the grounds of the bill of exceptions which are urged by plaintiffs in support of their application to have the case remanded.

## On the Merits.

The testimony shows that plaintiff, who was suffering with toothache, called upon defendant to extract the aching teeth. He placed her in charge of his assistant. The latter testified that he made the usual examination, and found the teeth, that he afterward extracted, inflamed. He, also, as a witness, stated that he administered an anasthetic; i. e., that he applied nitrous oxide, or gas, and took them out as teeth are usually extracted; they were not broken in extracting them; no accident happened.

A short time (a few moments) after the operation, plaintiff's wife returned to defendant's office and complained to the assistant, by whom her teeth had been extracted, of a piece of bone of the jaw, or of the tooth, she said was left in her mouth. His reply was, after examination, that the little bone that she felt would disappear. She subsequently suffered great pain, from which she sought relief by having the teeth extracted, but this did not afford relief. The dentist who pulled her teeth, after the two bicuspeds had been pulled, noticed nothing unusual about the gums of the teeth that had already been extracted. The gum was healing.

The operations by the physicians revealed that there was enlargement of the jaw, in all probability depending upon a necrosis or dead portion of the jaw.

At this point we conclude that justice demands that the case be remanded for a new trial.

The evidence, in our view, is not absolutely sufficient to do justice between the parties. Although the testimony before us leaves scarcely a doubt upon the merits, yet we are unwilling to deny a hearing to witnesses who may, under the present law, be heard.

We have not found it possible to concur in the decree in the present condition of the case.

It is doubtful whether we should affirm the judgment. We think, under the circumstances, the proper course is to remand the case. It may be, indeed it is probable, that the result will be the same as if we were to finally decide at this time, yet, in our judgment, further testimony should be heard. The admitted testimony will remain as admitted, without the necessity of re-offering it, so that only new evidence need be offered.

There is no question here of a new fact, or of new discovered evidences; the only question really is whether the law enacted after the ruling in the court below should be considered as now applying. We think it does apply.

The law is entirely remedial and affects none of the vested rights of any one. This court said in Baldwin vs. Bennett, 6th Robinson, 309: "Under the constitutional provisions relied on, no acquired rights and pre-existing contracts can be effected by subsequent legislation. But it is otherwise with regard to remedies and forms of proceedings. Whatever relates to the manner of conducting and trying a suit (*litis ordinatio*) is always within the control of the legislature, who can, at any time, make any change or modification they may think condusive to the public good and proper administration of justice in our courts."

It is ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed, and that this case be remanded to hear any other testimony admissible at this time, and for a decision by the District Court, after the testimony will have been heard, and altogether to be proceeded with according to law in such cases. The costs to abide the final determination of the case.

## ON APPLICATION FOR REHEARING.

The opinion of the court was delivered by

WATKINS, J. Our decree reversed the judgment rejecting plaintiff's demand for damages, and remanded the cause to the lower court, with directions, that it admit and consider the evidence of the plaintiff's

wife, which had been rejected on the ground that same was inadmissible in view of the fact that the suit was brought by the husband— the wife having been the one for injury to whom the suit was instituted.

The point of objection made and sustained in the District Court was that, under Revised Civil Code, 2281, the wife was not competent to testify for or against her husband.

But the legislature of 1898 so amended that article as to make it conclude as follows, viz.:

"Provided, further, that in all civil suits for damages, instituted by "the husband for, or on account of personal injuries sustained or "suffered by his wife, the wife shall be a competent witness."

Section 1 of Act 190 of 1898.

Our opinion held that that "law is entirely remedial, and affects none of the vested rights of any one." Citing Baldwin vs. Bennett, 6th Rob., 309.

This conclusion was not hastily reached, but after the most mature deliberation.

The present contention of defendant's counsel is that, as the statute was enacted *subsequent* to the rendition of judgment in his favor in the District Court, the interpretation now given it has the effect of divesting a *vested right of property* he acquired therein.

But the accepted canon of construction of retroactive laws, or those to which a retrospective effect is given, is that "whatever relates to the "manner of conducting and trying a suit is always within the control "of the legislature, who can, at any time, make any change or modifi- "cation they may think conducive to the public good, and a proper "administration of justice in our courts," etc.

In our opinion this statute furnishes an apt illustration of that rule, and that our decree was a proper one.

Rehearing refused.