181 So. 436

GEDDES & MOSS UNDERTAKING & EMBALMING CO., Limited, v. FIRST NATIONAL LIFE INS. CO.

No. 34793.

May 2, 1938.

Normann & Bethea and Harold M. Rouchell, all of New Orleans, for First National Life Ins. Co., relator.

John T. Charbonnet, of New Orleans, for respondent.

ROGERS, Justice.

On July 23, 1934, the First National Life Insurance Company issued a policy of industrial life insurance on the life of Nancy Y. Taylor. The policy was for $250 and Elizabeth Morton was designated as the beneficiary therein. Nancy Y. Taylor the insured, died on April 9, 1936, and Elizabeth Morton, the beneficiary, assigned to Geddes & Moss Undertaking & Embalming Company, Ltd., all her rights, titles and interests in and to the policy, in consideration of the services performed by the assignee in conducting the funeral of the insured.

Claim was made on the policy by Geddes & Moss Undertaking & Embalming Company, Ltd., as assignee of the beneficiary, but the claim was rejected by the insurer, First National Life Insurance Company. Thereupon the undertaking company brought suit against the insurance company to recover the face amount of the policy.

Plaintiff alleged the issuance of the policy by the defendant, the designation therein of Elizabeth Morton as beneficiary, the payment of all premiums, the death of the insured, the submission of proofs of death, the assignment to plaintiff and the defendant's refusal to pay. Defendant admitted these allegations of the petition, but defend-

ant denied all liability on the ground that the policy was without force or effect for the reason that the insured had willfully concealed and misrepresented the true facts as to her ill health at the time she signed the application for the policy, warranting the truth of her answers of present good health, the absence of any previous illnesses or treatment therefor, and the freedom at all times from certain specific diseases set forth, whereas her answers were knowingly and willfully false because for about four years prior thereto she had suffered from certain diseases which ultimately caused her death. In the alternative, defendant pleaded that, in any event, plaintiff's recovery could not exceed one-fourth of the stipulated benefit, because of certain limitations contained in the policy.

Upon the trial of the case, evidence in support of the defense was admitted by stipulation of the parties, subject to plaintiff's objection that it was inadmissible because of irrelevancy. After considering the case, the trial judge rendered judgment in plaintiff's favor for the full amount of the policy. This judgment was affirmed by the Court of Appeal. 177 So. 818.

The controversy between the parties hinges upon the admissibility of the evidence tendered by defendant, and objected to by plaintiff, in support of its defense. This controversy involves an interpretation of Act No. 160 of 1934, which is relied on by defendant to defeat plaintiff's claim. The interpretation placed upon the statute by the Court of Appeal for the Parish of Orleans in this case is in conflict with the holdings of the Court of Appeal for the Second Circuit in the case of Washington National Insurance Company v. McLemore, 163 So. 773, and the Court of Appeal for the First Circuit in the case of Sawyer v. Liberty Industrial Life Insurance Company, 171 So. 415, and Id., 172 So. 24. On suggestion of these divergent opinions of the Courts of Appeal with respect to the operation of Act No. 160 of 1934, the application of the First National Life Insurance Company for a Writ of Review herein was granted as a matter of right. Const.1921, art. 7, § 11.

The policy sued on was issued without requiring the insured to undergo a medical examination and the insured's application, although in writing, was not attached to the policy. The insurance contract was entered into prior to the adoption of Act No. 160 of 1934, but the insured died and this suit was filed subsequent to the date the law became effective.

Defendant concedes that under the law prevailing prior to the adoption of Acts 134 and 160 of 1934, defendant, not attaching the insured's application to the policy and not obtaining a medical examination of the insured, would be prohibited from proving the insured's alleged fraudulent misrepresentations concerning her health. But defendant contends that under the provisions of Acts 134 and 160 of 1934 the prohibition was removed and that proof of fraudulent misrepresentations in an application for industrial life insurance is now admissible, even though the application is not attached to the policy and a medical examination of the applicant is not obtained.

Under Act No. 97 of 1908, the insurer, by issuing a policy without a medical examination is presumed to waive its right to forfeit the policy on the ground of misrepresentation under certain conditions.

Act No. 134 of 1934 amended Act No. 97 of 1908 by adding an additional section as follows, viz.: "Nothing in this Act shall be construed to require an insurance company to cause a medical examination of an applicant to be made before issuing a policy."

The amendment of Act No. 97 of 1908 by Act No. 134 of 1934 added little to the amended statute, as was correctly pointed out by the Court of Appeal for the Parish of Orleans in the case of Bonin v. National Life & Accident Insurance Co., 165 So. 484, 485, namely: " * * * where a medical examination is reasonably possible, the interpretation placed upon the act by the Supreme Court does not require that such examination be made. It merely provides that where the insurer fails to require such examination it shall accept the consequences of such failure."

Hence, the real question to be determined in this case is, whether Act No. 160 of 1934 should be interpreted as retrospective or as prospective in its operation.

Defendant maintains that the legislative act prescribes remedial legislation and, therefore, should be interpreted as having retrospective force.

Plaintiff maintains that the legislative act is not one providing remedies, and that even if it does so provide it cannot be given a retrospective effect, because the language of the law discloses a legislative intention for prospective operation only.

The Court of Appeal for the Parish of Orleans, in this case, is in agreement with the Court of Appeal for the Second Circuit in the McLemore Case, and the Court of Appeal for the First Circuit in the Sawyer Case, that Act No. 160 of 1934 is a remedial statute in that it entirely relates to procedure. But the Court of Appeal for the Parish of Orleans is in disagreement with the other Courts of Appeal in the result reached by them that, because the statute is remedial, its operation is retrospective.

We do not consider it necessary to discuss plaintiff's contention that the statute under review is not a remedial statute, and that it cannot be interpreted to operate retrospectively, because such an interpretation would deprive plaintiff of substantial contractual rights which became vested in the insured under prior laws. Conceding that the statute is a remedial statute relating entirely to procedure, as found by all the courts of appeal, nevertheless we think that it is prospective, and not retrospective, in its operation, as contended by the plaintiff and decided by the court in this case.

As stated in the opinion of the Court of Appeal for the Parish of Orleans (page 820), "Act No. 160 of 1934 is a special statute in that it is limited to industrial insurance companies. By its terms, all industrial life insurance companies doing business in this state are required, prior to the issuance of any policy, to have the as-

sured make written application for the policy."

The statute is composed of four sections.

Section 1 provides:

"Be it enacted by the Legislature of Louisiana, that hereafter before any corporation, association or organization shall issue any policy of industrial life insurance in this State, the applicant for such policy shall be required to make an application in writing therefor to the insurer and to sign the application with his genuine signature, or ordinary mark, as the case may be, in which event the written and signed application shall be the basis for issuing the policy of industrial life insurance so applied for, and shall be a part of the contract of insurance issued thereon, whether or not the application or a copy thereof be attached to or indorsed upon the policy when issued."

Section 2 reads:

"If any corporation, association or organization as above mentioned shall issue any policy of industrial life insurance without obtaining a written and signed application by the applicant therefor, then such unsigned application shall be inadmissible in evidence as a basis of defense in any suit upon the policy by the insured for the collection of the policy, nor shall parol evidence of the contents of such application be admissible in evidence."

Section 3 declares:

"No policy of industrial life insurance shall be void, nor shall the rights of the assured thereunder be impaired, by any mis-

representation in the application of the assured unless such misrepresentation is wilful on the part of the assured and conceals facts as to the ill-health of the assured existing at the time of any such application, and provided further, that fraud shall always be a defense against any suit by the assured, if the insurer shall have obtained an application from the assured as hereinabove provided."

And section 4 contains the repealing clause.

We think that the language of the statute, taken as a whole, evinces the legislative intention to restrict its operation to industrial life insurance policies issued after the statute became effective.

The use of the word "hereafter" in the first section of the statute discloses that its provisions are to apply only to future contracts. The second and third sections of the statute are clearly predicated on the first section. Since the first section is only prospective in its operation, the other two sections are likewise only prospective in their operation.

The wording of the second section indicates that the rule of evidence therein announced is to apply only in suits affecting the contracts referred to in the first section; that is to say, to future contracts.

The provisions of the third section, that no policy shall be void unless the misrepresentation of the insured is willful and conceals facts existing at the time of the application, and that fraud shall always be a defense against a suit on a policy if the

required application be obtained, likewise relates only to policies and applications specified in the first section and to fraud as a defense to such policies; that is to say, to future policies and applications therefor.

■ Article 8 of the Civil Code provides: "A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts." This article declares the universal rule of statutory construction.

■ Remedial statutes, however, are not subject to the general rule, unless their language plainly shows a contrary intention. Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 97 A.L.R. 1184.

■ But the exception to the general rule does not authorize a construction giving a statute retrospective force where the language used in the statute discloses the legislative intent that its provisions shall be applicable only to contracts entered into after its enactment. 59 C.J. pp. 1170, 1171.

As stated by the Court of Appeal for the Parish of Orleans in the opinion herein under review, "* * * the use of the word 'hereafter' in the statute now under discussion plainly evidences that it was the will of the Legislature that the law should not apply to policies issued prior to its enactment."

As pointed out in the opinion under review, and as appears from the opinions themselves, neither the Court of Appeal for the Second Circuit in the McLemore Case nor the Court of Appeal for the First Circuit in the Sawyer Case discusses the language of the statute, and it is patent that the courts' attention was not directed to it by the litigants in those cases.

■ We agree with the conclusion reached by the Court of Appeal for the Parish of Orleans, that the policy involved in this case is governed by the law in existence prior to the adoption of Act No. 160 of 1934, and that defendant is prohibited from maintaining that the policy is null by reason of the alleged fraudulent representations made by the insured in her application for insurance.

The alternative defense that liability on the policy cannot exceed $75, or one-fourth of the face value of the policy, has been exhaustively discussed in the opinion under review. As we are fully in accord with the views expressed and the conclusions announced in the opinion, we find no necessity for further discussion on that phase of the case.

For the reasons assigned, the judgment of the Court of Appeal for the Parish of Orleans under review herein is affirmed at relator's cost.