On December 8th, 1941, the State of Louisiana brought this summary proceeding against the Alden Mills for the purpose of collecting from that corporation additional franchise taxes claimed to be due for the years 1933, 1934, 1935, 1936 and 1937, together with penalties, attorney's fees and costs. The respondent corporation for answer to the rule specially pleaded the prescription of three years as fixed by the constitutional amendment to Section 19 of Article XIX of the Constitution of 1921, which amendment, as Act 35 of 1938, was approved by the people of the State on November 8th, 1938. The respondent in its return and in the alternative that the plea of prescription should be overruled, denied that any further amounts were due to the State as additional franchise taxes for the years set forth.
There was judgment maintaining the plea of prescription and dismissing the rule, and the State has appealed.
Section 19 of Article XIX of the Constitution, as amended in 1938, reads as follows:
"No mortgage or privilege on immovable property, or debt for which preference may be granted by law, shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time prescribed by law, except privileges for expenses of last illness, privileges arising upon the death of the owner of the property affected, and privileges for taxes, State, parish and municipal; provided such tax liens, mortgages and privileges shall lapse in three years from the 31st day of December in the year in which the taxes are due, and whether such liens are now or hereafter recorded; and provided, further, that all taxes andlicenses, other than real property taxes, shall prescribe inthree years from the 31st day of December in the year in whichsuch taxes or licenses are due.
"Privileges on movable property shall exist without registration of same, except in such cases as may be prescribed by law." (The italicized portion represents the amendment.)
Prior to the adoption of that amendment there was, under the laws of Louisiana, no prescription applicable to the claim of the State for corporation franchise taxes.
It is the contention of the respondent corporation that the amendment should be *Page 100 
given retrospective effect, and that as a result it should be held that all of the claims asserted by the state are barred by the three-year prescription established by the amendment, whereas the State maintains that the amendment should be given only prospective effect and that the collection of those taxes which became due long prior to the adoption of the amendment should not be barred until the expiration of three years from the effective date of the amendment.
There are certain fundamental principles which are involved but concerning which, in spite of lengthy oral argument and in spite of the voluminous briefs, are not in reality in dispute. In the first place, there is a general rule concerning the question of whether statutes in general should be given retrospective effect and, of course, the rule is that such effect should not be accorded them. Our Civil Code so provides in Article 8:
"A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts."
This principle is so well recognized that no citation of authority is necessary. It is also well recognized, however, that if there is not involved the impairment of the obligation of a contract or the divestiture of vested rights, a statute may operate retrospectively if it is so worded that it is clear that its framers so intended; but the presumption, in general, that laws are intended to operate only prospectively is so strong that clear and unambiguous language is required to overcome it. In City of New Orleans v. Julien Vergnole, 33 La.Ann. 35, our Supreme Court quoted with approval the following from the well known Mr. Wade, a writer on the subject, "Retroactive Laws":
"`One of the cardinal rules by which courts are governed in interpreting statutes is, they must be construed as prospective in every instance, except where the legislative intent that they shall act retrospectively is expressed in clear and unambiguous terms, or such intent is necessarily implied.' `Every reasonable doubt as to the intention of the law-maker is resolved against
rather than in favor of the retroactive operation of the statute.'"
This rule or rather this exception to the effect that statutes or constitutional provisions may operate retrospectively where the language clearly indicates that such was intended is also so well established as to require no further citation.
But the principles which we have so far discussed apply only to statutes or constitutional provisions affecting substantive rights and have no application where there is involved what is known as a remedial statute or provision which affects not the substantive rights of the parties but only the remedy or remedies which are to be availed of or resorted to in the enforcement of those rights. It is the general rule that where such remedial statutes or provisions are involved, unless a contrary intention is evidenced by the language employed, retrospective effect should be given. This, however, has not universally been held to apply to statutes changing periods of limitation —
"On the contrary, in most jurisdictions statutes of limitation are construed as prospective and not retrospective in their operation, in the absence of a clear legislative intent to the contrary, and the presumption is against any intent on the part of the legislature to make such a statute retroactive. * * *" American Jurisprudence, Vol. 34, Verbo Limitation of Actions, § 43.
However in some jurisdictions it is held that statutes involving limitations are purely remedial and that therefore they should be given retrospective effect unless their language clearly indicates the contrary intention. For instance, in the same volume and section from which we have just quoted appears the following:
"However, some courts take the view that since limitation laws apply only to the remedy, they are not within the principle that statutes should be given a prospective rather than a retrospective construction, and therefore that they should be construed as retrospective unless they contain language clearly limiting their application to causes of action arising in the future. * * *"
This view that remedial statutes are to be given retrospective effect unless the language used indicates that the law-makers did not so intend and the further view that statutes fixing prescriptive periods are remedial seem to be well established in this state. In Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 630, 97 A.L.R. 1184, our Supreme Court said:
"No citation of authority aside from Article 8 of the Civil Code need be given *Page 101 
to support the general rule that laws, whether constitutional or statutory, should be construed to operate prospectively only, unless the words employed show a clear intention that they should have a retroactive effect. The language of Act No. 27, Second Ex. Sess. of 1934, does not indicate, much less show, a clear intention that it should act retrospectively.
"But counsel argue that this is a remedial statute, and it is true as they say that acts which are purely remedial in their nature are not subject to the above rule of interpretation unless their language plainly shows a contrary intention. Landry v. Grace, 167 La. 1042, 120 So. 770; Whittington v. Payne,151 La. 595, 92 So. 128; Cassard v. Tracy, 52 La.Ann. 835, 27 So. 368, 49 L.R.A. 272; Dunning v. West, 51 La.Ann. 618, 25 So. 306."
See, also, Geddes Moss Undertaking Embalming Co., Ltd., v. First National Life Insurance Co., 189 La. 891, 901, 181 So. 436; Stallings v. Stallings, 177 La. 488, 148 So. 687; Landry v. Grace, 167 La. 1042, 120 So. 770; Dunning v. West, 51 La.Ann. 618, 25 So. 306; Whittington v. Payne, 151 La. 595, 92 So. 128, and Shreveport Long Leaf Lumber Co. v. Wilson, 195 La. 814,197 So. 566.
In Sturges v. Crowninshield, 17 U.S. 122, 207, 4 Wheat. 122, 4 L.Ed. 529, the Supreme Court of the United States said:
"Statutes of limitations relate to the remedies which are furnished in the courts. * * *"
Mr. Sutherland, in his work on statutory construction, Vol. 2, second edition, Section 674, says:
"Where statutory relief is prescribed for a cause which is continuous in its nature, as a statute of limitations, or desertion for a certain time as ground for divorce, if the cause continues after the statute goes into effect, the future continuance of the cause may be supplemented by the time it was continuous immediately before the act was passed to constitute the statutory period. No person can claim a vested right in any particular mode of procedure for the enforcement or defense of his rights."
The principle that "prescription" affects the remedy seems to be well established here. See footnote 1932 Edition Dart's Louisiana Code of Practice-Art. 13, pages 7 and 8:
"Remedies are controlled by the laws of the state where the remedy is sought; prescription is a question affecting the remedy; prescription, then, is governed by the lex fori, and not the lex loci contractus, Union Cotton Manufactory v. Lobdell, 7 Mart., N.S., 108; Erwin v. Lowry, 2 La.Ann. 314, 46 Am.Dec. 545; Newman v. Goza, 2 La.Ann. 642; Lacoste v. Benton, 3 La.Ann. 220; Brown v. Stone, 4 La.Ann. 235; Bacon v. Dahlgreen, 7 La.Ann. 599; Succession of Lucas, 11 La.Ann. 296; Tompkins v. Prentice, 12 La.Ann. 465; Tate v. Garland, 12 La.Ann. 525; Walworth v. Routh, 14 La.Ann. 205."
Again we say that there is no real dispute between the parties on this question. Before we enter upon a discussion of the points which are truly in dispute and on which this case hinges, we deem it advisable to state still another principle which is well recognized and on which, when we carefully read all the briefs, we find that there is no dispute and that is that the principles which we have already discussed apply to constitutional provisions as well as to simple legislative enactments. See Paulsen v. Reinecke, supra; Fontenot v. Young, 128 La. 20, 29, 54 So. 408.
As we have already said, though counsel on both sides devote much of their argument and a large portion of their briefs to the discussion of these principles, in truth, they are not in disagreement over them. The real controversy involves two questions only — first, whether a statute or constitutional provision which not only fixes a period of prescription but also, if given retrospective effect, would abolish completely a substantive right which existed before its adoption, is a purely "remedial enactment" and second, does the language of the amendment with which we are concerned indicate an intention that the amendment under consideration should be given retrospective effect?
While it is true that laws of limitation affect the remedy and it is true too that usually when such a law is passed it may be given retroactive effect, it seems to us that when to give such effect to a new statute or to a constitutional amendment would result in entirely terminating a substantive right, then more than a mere matter of remedy is involved. The thought which we have in mind is well expressed by Mr. Cooley in his work on Constitutional Limitations wherein on page 764 of Vol. 2 he says: *Page 102 
"All statutes of limitation, also, must proceed on the idea that the party has full opportunity afforded him to try his rights in the Courts. A statute could not bar the existing right of claimants without affording this opportunity; if it should attempt to do so, it would be not a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions. * * *"
We do not intimate that in the case at bar there is involved any constitutional question such as the impairment of the obligation of a contract or the interference with or divestiture of a vested right, but we think that Mr. Cooley's statement shows clearly the distinction between a statute which, although it fixes a period of limitation where none was previously provided or shortens the period of limitation, nevertheless leaves to the holder of a substantive right a term within which he may exercise that right, and a statute which fixes a prescription which, if applied retrospectively would, immediately upon its adoption, terminate such a right by preventing its being asserted.
Let us study for a moment the effect of respondent's contention so far as the tax for the year 1933 is concerned. It is clear that since prior to the 1938 amendment there was no prescription, suit might have been brought on the State's claim for 1933 at any time. If, for instance, suit had been brought thereon in 1937, there could have been no successful plea of prescription and yet if respondent is correct, the effect of the statute passed in 1938 was to put an end on December 31st, 1936, to any right which the State may otherwise have had to enforce collection of the tax for 1933. The same would apply to the tax for each of the other years. If there be given to the amendment the effect for which respondent contends, then many claims for taxes of various kinds which might have been enforced by suit have been retroactively terminated. We do not suggest that it was not within the power of the people to "forgive" the claims of the state for taxes but we do think that to do so is not to afford a remedy but is rather to effect a substantive right and a statute or an amendment which affects a substantive right should not be given retrospective effect unless its language requires that it be interpreted as dealing with the past as well as with the future.
Counsel for respondent rely on several cases as authority for the view that such legislation is purely remedial. We cite for instance, Dunning v. West, 51 La.Ann. 618, 25 So. 306, 307:
"The law is entirely remedial, and affects none of the vested rights of any one. This court said in Baldwin v. Bennett, 6 Rob., La., 309: `Under the constitutional provisions relied on, no acquired rights and pre-existing contracts can be affected by subsequent legislation. But it is otherwise with regard to remedies and forms of proceeding. Whatever relates to the manner of conducting and trying a suit (litis ordinatio) is always within the control of the legislature, who can at any time make any change or modification they may think conducive to the public good and a proper administration of justice in our courts.'"
There can be no doubt of that, and if this amendment affected merely the trying and conducting of a lawsuit, or the time within which it should be filed, then certainly it could properly be characterized as remedial. But as respondent would interpret it, it does more than that, much more, it at once and forever puts an end to the right to resort to a lawsuit.
Counsel also rely on Whittington v. Payne, supra. That case involved a change in appellate jurisdiction as provided by the Constitution of 1921. The question was whether that Constitutional provision should be given retrospective effect — effect as of the date of its adoption or as of its ordinarily effective date. The court held that it should be given effect as of its adoption, and this had the effect of changing the jurisdiction on appeal of a case already in litigation. But this change did not deprive any party of a substantive right. It affected only the question of whether the appeal should be taken to the one court or to the other. There is no vested right or substantive right in any litigant to resort to any particular court. Thus the change affected only the remedy.
On Shreveport Long Leaf Lumber Co. v. Wilson, supra, great reliance is placed by counsel for respondents; in fact in their brief they say that it "sustains in every particular the contentions made by defendant in the case at bar."
There the Shreveport Company agreed to furnish lumber to Terry, a contractor whom Wilson had employed to build a house. Wilson did not require that Terry *Page 103 
furnish bond as he might have required under the provisions of Section 2 of Act 298 of 1926. That statute provided that a furnisher of material, when no bond was required, might preserve his lien by recording an affidavit within sixty days of the date of the last delivery of material. The Shreveport Company complied with the provisions of this statute and shortly thereafter brought suit against the contractor and the owner. Section 12 of the Act of 1926 provided that if within one year after the recording of the lien, suit should be filed, this suit would interrupt prescription and that nothing need be done to perpetuate the right to the lien.
In 1938 the Legislature, by Act 323, amended Section 12 of Act 298 of 1926 to provide that even where such a lien had been recorded, the filing of a suit should not interrupt prescription which should accrue within one year from the date of the recordation of the lien unless the lien should be reinscribed within one year from the date of the original inscription. The Shreveport Company, although it filed suit in ample time, did not reinscribe its lien and the Supreme Court held that by its failure to do so it had lost the lien although it had filed suit, which was all that was necessary when the lien was first acquired on June 8th, 1938.
We see a distinction in that legislation which provides methods to be followed in maintaining a lien is purely remedial, provided it does not destroy an already existing lien without affording a means whereby within a reasonable time the lien may be preserved. It is true that, when the lien was first recorded, the law provided that all that should be required would be the filing of a suit within one year, and it is true too that the new statute changed this and provided that the lien should be lost unless inscribed anew within one year of the original recordation. But there was ample time within which the new recordation might have been made. Therefore, the new legislation did not destroy the lien which remained perfectly binding and effective until the end of the year. All that the new statute did was to put the lienholder on notice that if it desired to perpetuate its lien it could no longer rely on the suit which it had filed but must reinscribe each year so long as it might be necessary to do so.
It must be conceded that Mr. Sutherland in the second edition of his work on statutory construction in Vol. 2, page 1169, par. 47, discusses a case in which retrospective effect was given to a statute even though the facts to which the statute was held to apply had been completely consummated before its passage. He says:
"* * * A statute provided that where a plank road or any portion thereof shall have been abandoned, or the owners thereof neglect to make repairs and collect toll for a period of sixty days, such road or portion of road should be deemed a public highway. The statute was held to apply to a case in which the abandonment occurred before the act was passed."
The case referred to is Woodward v. Winehill, 14 Wn. 394, 44 P. 860. Yet the same author, at page 1225 of the same volume, indicates that in order that a statute of limitations be given retrospective effect, it is necessary that after the enactment of the statute there must yet remain a reasonable portion of the period of prescription fixed. He says:
"* * * Where statutory relief is prescribed for a cause which is continuous in its nature, as a statute of limitations, or desertion for a certain time as ground for divorce, if the causecontinues after the statute goes into effect, the future continuance of the cause may be supplemented by the time it was continuous immediately before the act was passed to constitute the statutory period. * * *" (Italics ours.)
We conclude that, though the amendment is remedial in so far as it does establish a prescriptive period to be applied prospectively, if interpreted as applying retrospectively it would destroy a substantive right and that, therefore, it should not be so construed unless its language clearly indicates that the framers and that the people who approved it intended that it should apply retrospectively —
"A Constitution should operate prospectively only, unless the words employed show a clear intention that it should have a retrospective effect." Etchison Drilling Co. v. Flournoy,131 La. 442, 59 So. 867.
On behalf of respondent it is asserted that the language of the amendment shows an intention that it should operate retrospectively because it is made to apply to "all" taxes and it is said that the word "all" indicates the inclusion of past as well as of future taxes. We do not think so, because we feel that in the use of the word "all" *Page 104 
the lawmakers indicate an intention to include all of the different kinds of taxes.
On behalf of the State, emphasis is laid on the words "shall" and "are" in the clause "all taxes and licenses * * * shall prescribe in three years from the 31st day of December in the year in which such taxes or licenses are due."
The word "shall" usually indicates action to be had in the future and the same may even be said of the word "are" when it is connected with "shall" — "You shall pay certain debts three years after they are due" seems to indicate future action. Surely, at any rate, it cannot be said to clearly refer to debts already in existence. Counsel for respondent cite Hurry v. Hurry,141 La. 954, 76 So. 160, 161, as authority for the view that certain language should be construed as operating retrospectively but there the statute provided:
"`* * * That when married persons have been living separate and apart for a period of seven years or more * * *.'" (Italics ours.)
As the court said in that case "This language can convey but one meaning to the mind * * *," and that is that the act was intended to apply to all persons who, at the time of its adoption or in the future might have been living apart. A retrospective effect is certainly intended by the words "have been".
We are told that the purpose of the amendment of 1938 was to release taxes already due; that the framers gave thought to that particular purpose and industriously worked out a formula which would release past taxes as well as those which might accrue in the future. If they industriously worked out such a scheme then they were most careless in their choice of words. They could easily have said that taxes shall prescribe in three years from the year in which they "become or became" due. There would have been no misunderstanding such a provision. And while we are considering the question of what meaning shall be given the words used, it is well to remember that while we may, if necessary, seek otherwise to ascertain what was meant, it is always best to give to words their usual significance, and it is not wise to resort to extraneous matters to find an interpretation for clear and unambiguous language. Article 14 of our Civil Code provides the words of the law —
"The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words."
In support of the view that it was intended that the amendment should operate retrospectively, it is pointed out that in order to accomplish that purpose a constitutional amendment was resorted to, whereas had there been no intention to have the legislation operate except in the future, a simple legislative act would have sufficed. It is said that this, in itself, indicates a clear intention on the part of the framers of the amendment. The argument is that a simple statute could not have been given retrospective effect because it would have run counter to Section 13 of Art. 4 of the Constitution of 1921, which provides:
"The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishment, in whole or in part, of the indebtedness, liability or obligation of any corporation or individual to the State, or to any parish or municipal corporation thereof; provided, the heirs to confiscated property may be released from all taxes due thereon at the date of its reversion to them."
From this premise the conclusion is drawn that the Legislature recognized that an amendment to the Constitution would be required and adopted that method in order to accomplish that purpose. If so, then we say again that it was most careless in its use of language. It is inconceivable that the framers carefully considered the purpose to be accomplished and decided that they were so anxious to forgive already accrued taxes that they should go through the complicated and expensive procedure of adopting a constitutional amendment for the express purpose of forgiving taxes already due, and should then use language indicating a contrary purpose. The true purpose in resorting to a constitutional amendment may well have been to make it more difficult for future lawmakers to change or to abolish the prescriptive period established by this amendment.
Counsel for the State point to three cases which they maintain are directly in point and which they say are authority for their view that the amendment should be construed as operating only prospectively. *Page 105 
These decisions are: Succession of Parham, 51 La.Ann. 980, 25 So. 947; Harold S. Mayer v. Victor J. Gros, Receiver, 5 Cir., 110 F.2d 733, and State of Louisiana v. Spence Goldstein, Inc., La.App., 6 So.2d 102.
In Succession of Parham a succession was being administered and among the assets was certain real estate for which taxes for some twenty years, between 1872 and 1896, had been assessed. A rule was taken to effect a cancellation of the tax liens. During the period the Constitution of 1879 had been in effect. After the rule had been filed, the Constitution of 1898 was adopted. Article 176 of the Constitution of 1879 was changed by Article 186 of the Constitution of 1898 to read as follows:
"No mortgage or privilege on immovable property shall affect third persons, unless recorded or registered in the parish where the property is situated, in the manner and within the time as is now or may be prescribed by law, except privileges for expenses of last illness and privileges for taxes, State, parish, or municipal; provided, such tax liens, mortgages, and privileges, shall lapse in three years from the 31st day of December, in the year in which the taxes are levied, and whether now or hereafter recorded."
The only change effected was that resulting from the language "* * * Provided, such * * * privileges, shall lapse in three years."
The contention of the Administrator was exactly the contention which is found here; that the prescription provided for in the change effected by the Constitution of 1898 should operate retrospectively.
The court discussed at length the various legal principles which we have referred to earlier in this opinion, and then held that retrospective effect should not be given to the constitutional amendment. But counsel for respondent contend that the ratio decidendi was not that the amendment was not purely remedial but that it was in conflict with another portion of the same constitution, and counsel argue that the result reached in that case resulted entirely from the conflict in these two sections of the same constitution. They also argue that Mayer v. Gros, Receiver, supra, decided by the U.S. Circuit Court of Appeals, was based on the decision in the Succession of Parham. They say that the court merely followed the rule that Federal Courts are required to follow the construction placed by state courts on state statutes and constitutions. It may be that the Succession of Parham was the result of the conflict between two constitutional provisions and that therefore all that the court said concerning retrospective statutes and those which should not be given retrospective effect might be regarded as dicta. And it is also no doubt true that in Mayer v. Gros, Receiver, supra, the Federal Court, in accordance with the jurisprudence established in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and followed in Ruhlin v. New York Life Insurance Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290, reached this conclusion as a result of consideration of the Parham case. But in State of Louisiana v. Spence Goldstein, Inc., supra, our brothers of the Second Circuit seem to have given independent thought to the question. There, there was found involved the identical question which is presented here: Should retrospective effect be given to this same constitutional amendment? The court said [6 So.2d 104]:
"There is no reference whatever to past due taxes in the amendment. Simple words could have been employed to indicate that such taxes were to be affected thereby had such been desired; and since words of such import are absent, the inference irresistably arises that their omission was not unintentional. Surely, as said by the text writers, no presumption arises that a law is intended to have retroactive effect because such intention is not positively negatived. The converse is true."
Counsel for respondent find fault with the opinion of the court in the Spence Goldstein case in that the court referred to the right of the State to collect taxes as a "vested" right, and they say that the term "vested rights" is used only in connection with persons or citizens and not with reference to a State. This may be true but our brothers of the Second Circuit did not intend the word "vested" as counsel for respondent would use it. They intended to distinguish between a substantive right and a remedy, and we think that in this connection the use of the word "vested" simply meant that the State had a substantive right to collect these taxes and that a waiving of that right should not be permitted unless the language effecting the *Page 106 
waiver should be found to be clear and unambiguous.
Since the matter was submitted below and is now before us only on the plea of prescription, and since we think the plea of prescription is not well founded, it is obvious that it must be remanded for further proceedings.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that this matter now be remanded to the Civil District Court for the Parish of Orleans for further proceedings according to law.
Reversed and remanded.