## No. 9365.

### W. J. McGEEHAN ET AL. vs. E. A. BURKE, TREASURER.

The amendment of 1884 to Art. 130 of the Constitution did not destroy the old, or create new, district courts for the Parish of Orleans, but merely altered the jurisdiction of the existing courts.

The amendment to Art 146 of the Constitution only relieved the judicial expense fund from contribution to *future* criminal expenses. It granted a preference on said fund in favor of the officers named therein over all *future* charges on the fund; but it did not operate retroactively to destroy the valid, vested rights of prior legal warrant holders.

APPEAL from the Seventeenth District Court, Parish of East Baton Rouge. *Burgess*, J.

---

*B. R. Forman* for Plaintiffs and Appellants.
*Miller & Finney* for Intervenor and Appellee.
*F. L. Richardson* on the same side.

---

The opinion of the Court was delivered by

FENNER, J. Art. 145 of the Constitution of 1879 required the General Assembly to enact a fee-bill for the clerks of courts, civil and criminal sheriffs, constables, register of conveyances, and recorder of

mortgages of the Parish of Orleans; and also to make provision for the collection of such fees directly by the State, instead of by said officers themselves, through the medium of "a system of stamps or stamped paper," to be bought from the State and to be used in payment of the fees.

Art. 146 directed that the sums realized from the sale of said stamps "shall be set aside and held as a special fund, out of which shall be paid by preference the judicial expenses of the parish of Orleans;" and further prohibited the payment by the State of any such expenses "except from the special fund provided for by this article, and any such appropriation made contrary to this provision shall be null and void."

These articles were carried into operation by appropriate legislation. The fund proved insufficient to meet the charges upon it, and competition arose between the various claimants thereon. See Arnaud vs. Treasurer. 34 Ann. 548. By Act No. 17 of 1882, the General Assembly put an end to such disputes by providing for the payment of all warrants against the fund in rotation of months and in order of date.

Recognizing the inadequacy of the fund to meet "all the judicial expenses of the parish of Orleans" as contemplated by Art. 146, the legislature took steps to relieve it from the payment of the expenses of the criminal courts. To this end it adopted Act 113 of 1882, proposing an amendment to Art. 146 of the Constitution, in the following form, viz: "That Art. 146 of the Constitution be amended so as to read as follows: All fees and charges fixed by law for the various civil courts of the parish of Orleans and for the register of conveyances and recorder of mortgages of said parish shall enure to the State, and all sums realized therefrom shall be set aside and held as a special fund, out of which shall be paid by preference *the expenses of the clerk of the Civil District Court, the clerks of the city courts, the register of conveyances, and the recorder of mortgages* of the parish of Orleans, provided that the State shall never make any payment to any sheriff, clerk, etc.," following the words of the original article.

A critical comparison of the amendment with the original article will show that the only change consists in substituting for the general words "judicial expenses," which *included* expenses of criminal courts, the words *italicized* in our quotation enumerating the particular officers and *excluding* those of the criminal courts.

This amendment was submitted to, and adopted by, the people, at the general election of 1884.

At the moment of its promulgation, under the administration of the fund in accordance with existing laws, there were outstanding a large number of unpaid warrants for past fees and services, which, by the express terms of Act 17 of 1882, were entitled to be paid out of the fund in rotation of months and in order of date, and hence by preference over all warrants of a later date.

By Act No.——of 1882, the General Assembly proposed another amendment to Art. 130 of the Constitution, establishing the district courts for the parish of Orleans in similar form, to-wit: "That Article 130 of the Constitution be amended so as to read as follows;" repeating the original article with certain changes in the jurisdiction of the courts. This amendment was also adopted by the people at the election of 1884.

The treasurer of the State, charged with the custody and disbursement of the judicial expense fund, did not conceive that these amendments affected his duties as prescribed by Act 17 of 1882, and continued to pay all warrants which had been lawfully drawn against it from the fund as it accumulated, in rotation of months and in order of date, without regard to the fact that they had been drawn prior to the date of said amendments. The present suit is brought by the officers named in the amendment to Art. 146, as the future preferred beneficiaries of the fund, and who hold warrants drawn subsequently to the promulgation of the amendments. Its object is to restrain the treasurer from paying prior drawn warrants, and to compel him to pay those actually held, or hereafter accruing to them, by preference, out of the funds arising from the sale of stamps after the promulgation of said amendments.

They assume that the effect of the amendment to Art. 130 was to wipe out the old, and to create a new, civil district court for the parish of Orleans; that the effect of the amendment to Art. 146 was to establish an absolute preference on the judicial expense fund, in favor of the officers of such new court and of their fellow-beneficiaries therein named, over the outstanding warrants in favor of the officers of the defunct court as well as those for prior criminal expenses.

We cannot admit that any such effects were intended or produced by the amendments.

So far as the amendment to Article 130 is concerned, we concur in the construction thereof evidently adopted by both the executive and legislative branches of the Government, under which the continued existence of the district court for the parish of Orleans, as originally established

by the Constitution of 1879, has been recognized, and the judges thereof, whose terms had not expired, have been maintained in office. The only effect intended or operated by the amendment was the change of jurisdiction therein prescribed. Therefore, the officers of that court, prior to the amendment to Art. 146, are as fully included within its terms as the present complainants.

So far as the latter amendment is concerned, we are clear that its only intention and effect were to relieve the fund from subjection to *future* criminal expenses.

The stamp system and the judicial expense fund were established by Articles 145 and 146 of the Constitution, and they continue, to-day, the same system and the same fund, originally provided, unaffected by the amendment to the latter article, except as to the charges *hereafter* affecting them. When this amendment was adopted the warrants then outstanding had a legal and valid right to be paid out of the accumulations of said fund in rotation of months and by preference over all warrants of later date.

When that amendment declared that the "expenses of the clerks" and other officers therein named, " shall he paid by preference " out of said fund, it established a perfectly valid preference in their favor over *future* charges, of whatever nature, on said fund. But it did not divest or destroy existing prior preferences established by law, and vested in the then warrant holders.

No cunning of dialectics can evade the self-evident proposition that to give the amendment an interpretation destroying such vested rights would be to give it a retroactive effect.

We decline to follow counsel into the discussion of the *power* of the State, by constitutional provision, to pass retroactive laws and to divest vested rights. Such questions do not arise in this case. We rest our decision on the salutary and universal rule, recognized in all systems of law, that no statute or constitutional provision is to be construed as designed to destroy or affect vested rights, however broad the general terms used, unless such intention is unequivocally expressed or necessarily implied from the very nature of the provision. Potter's Dwarris, p. 162; Cooley Const. Lim. pp. 62, 370; Civil Code, Art. 8; Const. 1879, Art. 125. There could hardly arise a case in which we could apply this rule more readily; for it would be difficult to express too strongly the positive certainty we feel that it enforces the legislative intent. The arguments on the other side are based upon a subordination of the substance and object of the constitutional amendment to its mere form.

Judgment affirmed.