Plaintiff, alleging that he is totally and permanently disabled from the effects of an accident experienced by him on November 20, 1945, while performing the duties of his employment with defendant, sued to recover workmen's compensation on that basis. He alleged that while pulling one end of a cross-cut saw employed in sawing a large log, the saw began to run heavily and pinched; that as he pulled or tried to pull the saw toward himself, using considerable effort in doing so, a pain was suddenly felt from his right shoulder downward; that his saw partner (who was pulling the other end of the saw) drove wedges into the log above the saw which had the effect of releasing it, and enabled petitioner to continue work until the usual quitting time for the day, although not free of pain at any time. These related facts form the primary basis of the accident alleged upon.
Plaintiff further alleged and testified that notwithstanding he was able to work for about one hour after struck with the pain, the pain persisted continuously although he did not inform his saw partner of the fact, nor did he tell the employee, who, in *Page 794 
his presence, scaled the logs cut that day by him and his partner, and likewise did not impart his condition to any of the several laborers who rode with him on a bus to defendant's mill, a distance of some twenty miles, after the day's work had ceased. He did, however, on arriving at his home inform his wife of the pain he had felt while sawing logs and thereafter. He then felt so badly that he was forced to lie down on a couch and declined to drink coffee, contrary to regular habit, and also did not eat supper.
On the morning of November 21st, plaintiff and his wife testified that he felt some better and arose as usual but was not free of pain in the right side of the chest. He walked to the place where the workmen boarded the bus destined for the scene of log cutting, but before getting on the bus the pain became so intense that he was forced to abandon the hope of working that day, and returned home. In this statement he is corroborated by the log scaler. He immediately went to bed and remained therein until the morning of November 23rd. All the while the pain continued to bother him. After arising that morning he began to dress, and while stooping over to tie a shoe the pain suddenly became much more intense, and he was, for that reason forced to again lie down. His wife endeavored to get in touch with the company physician, but was unable to do so. Plaintiff's condition became so grave that a taxi was hired and he and his wife were immediately driven to the clinic of Dr. E.L. Carroll in Columbia, Louisiana, some seven miles distant. An X-ray made by Dr. Carroll disclosed definitely that plaintiff had suffered spontaneous pneumothorax or collapse of the right lung. He stayed in the clinic for five days and then returned to his home. Continuously, from that time to date of trial, he has been under observation and treatment of one or more physicians.
It is admitted by defendant that Dr. Carroll's diagnosis of plaintiff's condition was correct. And it is plaintiff's theory that the incipiency of the disabling disease was when he first felt the pain while pulling the saw the afternoon of November 20th; that deflation of the lung was slow but continuous until it reached the climax the morning of November 23rd.
Plaintiff admits that at the time of filing suit (August 21, 1946) the right lung had regained normal size and shape, but avers that he was then and had been for some time suffering from diaphragmatic pleurisy and an "anxiety state," both secondary to and superinduced by the spontaneous pneumothorax.
Plaintiff, through his attorney, made demand on defendant for payment of compensation on July 22, 1946, which was over eight months subsequent to the date of the alleged accident.
Defendant excepted to the suit as being premature under the provisions of Subsection 1(B), Section 18, Act 20 of 1914, as amended by Act No. 85 of 1926, § 1, in that it is not alleged that he: "is not being or has not been paid, and that the employer has refused to pay, the maximum per centum of wages to which petitioner is entitled under the provisions of this act. * * *."
The penalty for failure to make such allegations or the equivalent is dismissal of suit.
Defendant also filed exceptions of no cause and no right of action. All exceptions were overruled but that of prematurity only is urged here.
On the merits the suit is resisted on these grounds:
1. That it was not instituted within six months of the date of the alleged accident;
2. That plaintiff did not suffer an accident while performing the duties of his employment with defendant;
3. That if he did experience such an accident he has fully recovered from its disabling effects, and therefore, if now unable to do work of any reasonable character, the disability should be accredited to cause or causes having no relation to or connection with his employment.
In lengthy written reasons therefor, the trial judge resolved all issues against defendant and awarded plaintiff compensation at the rate of $20 per week during disability, not exceeding four hundred (400) weeks, and for medical and hospital expenses incurred by him prior to the trial. *Page 795 
His right to claim and sue for additional expenses of this character, within the limits of law, if such thereafter be incurred, was reserved to him. Defendant appealed to this court.
[1] Pertinent to the exception of prematurity, and as a substantial contradiction thereof, articles Nos. 18 and 19 of the petition read as follows:
"That notwithstanding the knowledge alleged in the preceding paragraph, there has been no payment nor offer of payment of compensation to petitioner by defendant or its insurer.
"That inasmuch as formal demand was made upon defendant by petitioner on July 22, 1946, for compensation for the alleged injury, and as defendant has refused said demand, it is necessary that this suit be brought to protect petitioner's rights in the premises."
We are of the opinion that the language of these articles, while not as specific as could have been, substantially complies with the requirements of the quoted provision of the Workmen's Compensation Law, and for this reason, we approve the ruling of the lower court on this exception.
[2, 3] Sub-section 1 of Section 11 of the Workmen's Compensation Law, as amended by Act No. 247 of 1920, § 1, provides that no proceeding to recover compensation shall be maintained unless notice of the injury alleged upon shall be given to the employer within six months after date of the injury or death. Sub-section 2 of Section 11, provides that failure to give or tardy giving of such notice shall not be a bar to proceedings under the Act: "If it be shown that the employer, or his agent or representative, had knowledge of the accident, or that the employer has not been prejudiced by such delay or want of notice."
Construction of these provisions should be liberal in favor of the plaintiff; and unless it be clearly proven that because of the delay in giving notice of the accident the rights of the employer and/or his insurer have been thereby prejudiced, the bar should not be enforced. In this case, notwithstanding the long and unusual delay in giving notice of the alleged accident, the record is quite clear that no one has been really prejudiced thereby. The insurer's adjuster made the same sort of examination and contacted the same witnesses he would have, had knowledge of the accident and ensuing disability therefrom been imparted to him much earlier. Plaintiff's saw partner, the man who scaled the logs, and Dr. Carroll all testified in the case and on defendant's behalf. It is not shown that defendant has been deprived of the testimony of a single witness or of the benefit of any documentary evidence because of the delay. So far as we are able to see, the trial of the case, a year after the alleged accident, was, for all practical purposes, conducted in the same manner and was participated in by the same persons as would have happened had trial been months earlier. There is no doubt that plaintiff suffered spontaneous pneumothorax. All the doctors agree on this point. The tardy giving of notice did not affect this question one way or the other.
[4] The most involved, in fact, the pivotal question in the case is whether plaintiff experienced an accident within the meaning and intendment of the Workmen's Compensation Law as interpreted and construed by the courts of the state. We are satisfied, as was the trial judge, that continuously since November 20, 1945, to date of trial, November 15, 1946, plaintiff's disability to perform work requiring strenuous physical effort has been total. This is the only kind of work he is competent to perform. It is also shown to our satisfaction that the mentioned disability is directly traceable to the ill effects of the pneumothorax, and, this being true, it is immaterial whether the continued disability, after disappearance of the pneumothorax, is the result of diaphragmatic pleurisy or not. We are strongly inclined, however, to the belief that pleurisy, at time of trial, was present in the right lung. It is a disabling disease.
Prior to November 20, 1945, plaintiff was a strong, vigorous workman and had not reached middle age. He had not prior to that time sought workmen's compensation of defendant, for whom he had worked regularly and rendered satisfactory service for nearly twenty years. *Page 796 
[5] Pneumothorax, as explained by testifying doctors, occurs when the negative pressure maintained by the chest cavity, between the chest wall and lung, is transformed into a positive pressure by air entering the cavity either from without the chest wall, following trauma, or from the lung itself. This unbalancing of the cavity pressure causes the lung to collapse and deflate. When this condition comes about suddenly and spontaneously, it is called spontaneous pneumothorax. Pneumothorax is always traceable to tuberculosis, a cyst, bleb, adhesion or trauma. It is shown that violent movement of the body, sneezing, or coughing are sufficient to precipitate pneumothorax and that strenuous physical labor or exercise will also bring it about when the lung is affected by disease that has reduced its ability to resist. However, like heart attack, it may happen when one is inactive or asleep.
The decided preponderance of the medical testimony sustains the contention that plaintiff could have experienced the pain he asserts he felt, while pulling the pinched saw from conditions within his chest that finally culminated in complete lung collapse; that the pain naturally followed lesion of the lung covering. This is entirely possible because it is shown that a leaky lung does not always collapse suddenly. Air may gradually escape therefrom into the chest cavity, and while this is going on pain is present but not nearly so intense as that which follows total collapse. The history of plaintiff's case brings it clearly within the above related characteristics of this ailment.
Defendant made much of the fact that plaintiff did not impart to any one prior to reaching home the afternoon of November 20th, the information that he had been struck by the pain while working, and did not mention this to Dr. Carroll when he entered the clinic. Also is stressed the fact that for eight months plaintiff made no claim for compensation nor did he report to his employer that he had a disabling accident, although for a goodly part of the time he was hard pressed for subsistence for himself and family. We are impelled to say that such conduct was most unusual, but it can be fairly well explained from the record and human disposition. Plaintiff evidently did not believe the pain originally felt by him indicative of serious effects. He is probably one of those persons who is not given to pouring into the ears of others troubles considered trivial. But is is beyond dispute that when he arrived home that afternoon he was a sick man and was experiencing considerable pain. His past favorable record as a workman serves as strong evidence to prove his good faith. In this connection, it may also be said that he did not report to Dr. Carroll that he had been sick and in bed for the two days prior to entering the clinic. Had he been endeavoring to build up a case he would certainly not have omitted this important information. The doctor was entitled to know the antecedent facts concerning his physical condition.
Plaintiff alleged and testified that the reason he did not report to defendant that he had an accident and seek compensation therefor, was because he thought he would soon recover good health and be able to resume work, However, his wife did report to the defendant's president and general manager that plaintiff was sick and unable to work and was thereafter, for over twenty weeks, paid sick-benefit insurance by the carrier of that kind of insurance on all of the employees of defendant. We doubt that the reason assigned by plaintiff for not reporting to defendant's officers all the facts antecedent to his disability had controlling influence upon him. It is our thought that he was really in ignorance of his rights under the Workmen's Compensation Law until he, or someone for him, consulted his present counsel, and was advised by him that, in his opinion, the case was compensable.
[6] But defendant contends that even if plaintiff was struck by the pain in his right shoulder and chest on November 20th, as by him alleged, this does not constitute an accident within the Workmen's Compensation Law; that the accident, if any, occurred when straining to lace his shoe the morning of November 23rd.
It is now well settled that to constitute an accident within the meaning of the Workmen's Compensation Law in cases *Page 797 
where the work of the claimant entails regularly heavy physical effort, it is not necessary that the injury from which disability follows be the result of unusual physical effort. If a diseased organ gives way while the laborer is performing his usual and customary heavy duties, and disability results, it is compensable. This doctrine is affirmatively established by the following cases, viz.: Jackson v. Travelers' Insurance Company, et al., 180 La. 43, 156 So. 169; Renfrow v. Police Jury of Caddo Parish, et al., La. App., 155 So. 291; Biggs v. Libbey-Owens-Ford Glass Company, Inc., et al., La. App., 170 So. 273; Nickelberry v. Ritchie Grocer Company, et al.,196 La. 1011. 200 So. 330; Hill v. J. B. Beaird Corporation, La. App.,19 So.2d 295.
[7] But in neither of these cases do the facts, relied upon to constitute the accident, precisely compare with those in the instant case in that in those cases the physical breakdown manifested itself instantaneously or nearly so, whereas here the breakdown or consummation of the accident occurred nearly three days subsequent to the first pain, and at a time the claimant was not working. It reasonably appears that from the time the first pain was felt by plaintiff until he was overwhelmed the morning of November 23rd, the disease was in steady progress towards the end. At no time during this interim was plaintiff free of the pain that undoubtedly emanated from the escapage of air from the lung that was slowly but certainly approaching collapse. It required this time, in this particular case, for the completion of the accident that began when the saw pinched the afternoon of November 20th. In view of the very liberal construction accorded the Workmen's Compensation Law by the Supreme Court of this State, we hold that the facts of this case constitute an accident, and that having had the initial injury while he was working, plaintiff is entitled to compensation during the time of total disability. The period of disability, of necessity, cannot be definitely determined.
For the reasons herein assigned, the judgment from which appealed, is affirmed with costs.