99 So.2d 811 (1957)
Emmlc J. TALBOT
v.
TRINITY UNIVERSAL INSURANCE COMPANY and James M. Johnson, d/b/a Stop and Shop.
No. 4534.
Court of Appeal of Louisiana, First Circuit.
December 23, 1957.
Rehearing Denied February 3, 1958.
Writ of Certiorari Denied March 17, 1958.
*812 Mouton, Champagne & Colomb, Lafayette, for appellant.
Davidson, Meaux, Onebane & Nahrbass, Lafayette, for appellees.
ELLIS, Judge.
Plaintiff has filed this suit in which he is claiming compensation for total, permanent disability as the result of an alleged accident and injury which he also alleged occurred on June 19, 1956, while he was employed as assistant manager of a grocery store located in Lafayette, Louisiana, named "Stop & Shop" owned by his employer, James M. Johnson, who, together with his insurer, were made parties defendant.
The case was duly tried and submitted and judgment rendered in favor of the defendant dismissing plaintiff's demands for the reason that the facts failed to sustain plaintiff's allegation that he had suffered an accident and, in any event, "there is no causal connection between the employment activity in which he was engaged, and the present disability of which he complains."
The defendant in the lower court also filed an exception of no cause of action which he styled no right or cause of action and which was referred to the merits by the trial court. In addition the principal defenses are, first, that defendant's business is not covered by the workmen's compensation act and plaintiff's employment was not hazardous within the definitions of the statute, and, second, that plaintiff did not sustain an accident within the contemplation of the law. In his written reasons for judgment the learned judge below overruled the exception filed by the defendant and further held that the first of the defendant's two principal defenses was not sound under the facts and the jurisprudence. We agree with his reasons as well as his ruling and we quote that portion of his written reasons:
"Defendants filed exceptions of no right and no cause of action which were referred to the merits, based on the proposition that plaintiff's suit seeks compensation *813 and medical payments under the increased allowance of the 1956 amendment, and also that the suit asks statutory attorney's fees and penalties against the defendant Johnson, who is an individual and not subject to the demand. These exceptions are overruled, for the obvious reason that even conceding the correctness of defendant's position, the judgment rendered by the court would be merely a reduction of plaintiff's demands.
"During the trial, defendant Trinity Universal Insurance Company objected to the taking of any testimony tending to show insurance coverage, on the grounds that same constituted an enlargement of the pleadings, which do not contain any specific allegations of coverage. A reading of plaintiff's petition, however, leaves no doubt as to the position of this defendant, and under the relaxed rules of pleading which prevail in compensation cases, the objection is considered to be without merit and is overruled.
"The record discloses that defendant Johnson operates a self-service grocery store in the City of Lafayette, and in conjunction with this enterprise employs a butcher, who is in charge of the meat counter. Plaintiff was engaged in work which he himself terms `assistant manager and clerk.' His duties called for him to help customers entering the store, operate the electric cash registers, and to assist the butcher whenever the occasion required. His hours were from 12 noon to 4 p. m., and from 6 p. m. to 11 p. m. He was alone in the store from 12 to 1, except for the butcher who got off at 12:30 p. m., coming back to work from 4:30 p. m. until 8 o'clock. Most of plaintiff's time was devoted to waiting on customers, and during slack periods, putting up merchandise, straightening up the shelves, and getting things in order.
"It is also clear from the record that when the butcher was not in the store, plaintiff was required to handle the meat counter, and to operate an electrically powered meat slicer and an electrically powered meat grinder.
"It is generally conceded as common knowledge that the operation of a retail grocery store and meat market is a non-hazardous occupation, and one not coming within the purview of the compensation statute. Defendant's position is, therefore, well taken, unless, because of the factual situation outlined above, it falls under the concluding paragraph of LSA-R.S. 23:1035, and is one involving `* * * The construction, installation, operation, alteration, removal or repairs of wires, cables, switchboards or apparatus charged with electrical current.' (Emphasis supplied.) No other type of machine is used in Mr. Johnson's business, nor is there an automobile or delivery truck used therein.
"Plaintiff relies strongly upon the decision of the Orleans Court of Appeal in Stephens v. Catalano, 7 So.2d 380, and Storm v. Johnson, 23 So.2d 639, also decided by the Orleans Parish Court of Appeal.
"In Stephens v. Catalano, plaintiff suffered the loss of the middle, index, and ring fingers of his left hand while using an electric meat grinder in defendant's meat market. He was employed as delivery and general utility boy in the establishment. The Orleans court held that the use of this machine and other appliances rendered the defendant's business hazardous within the meaning of the compensation law, and, since plaintiff's employment required him to use the machine once or twice daily, recovery was allowed.
"In Storm v. Johnson the Court followed the Catalano case and held that the use and operation of a meat slicer and meat grinder in a restaurant business was sufficient to bring such business under the above quoted section of the Act, and allowed recovery to an assistant manager who cut his left thumb while using the meat slicer.
*814 "Both cases cite and rely upon the Supreme Court decision of Byas v. Hotel Bentley, 157 La. 1030, 103 So. 303, applying the proposition therein announced to factual situations which are, in the opinion of this Court, not entirely similar. In the Byas case, plaintiff was required to use and operate an electric elevator and to go on errands to the engine room of the hotel, where a variety of mechanical equipment was operated by the hotel, such as the elevator, electric water pump, boilers, electric generating and distributing machine and system, etc. The Supreme Court found that the Hotel business so operated, entailing the use of such equipment as a substantial and integral part of the operation, rendered the business hazardous. The same Court, in the case of Brownfield v. Southern Amusement Co., 196 La. 73, 74, 198 So. 656, in referring to the Byas case said:
"`There the major portion of the employee's duties brought him into contact with the machinery used in his employer's business. * * * Byas v. Hotel Bentley represents the uttermost extent to which the doctrine should be made to apply.'
"In Meyers v. Southwest Region Conf. Ass'n of Seventh Day Adventists, 230 La. 310, 88 So.2d 381, the Supreme Court again applied and affirmed the doctrine of the Byas case, in holding that a minister required to drive an automobile as a necessary regular incident or part of his employment as such was covered by the Workmen's Compensation Act, even though the business of conducting a church organization is clearly not hazardous per se.
"On the other hand, defendants cite and rely upon the cases of Richardson v. American Employer's Insurance Co. [La.App.], 1st Cir., 31 So.2d 527; Foret v. Paul Zibilech Co., Inc. [18 La.App. 363], 137 So. 366; Atkins v. Holsum Cafeteria [La. App.], 159 So. 758; Harrington v. Franklin Stores [La.App.], 55 So.2d 647; and Brown v. Toler, [La.App.], 19 So.2d 680.
"In Foret v. Paul Zibilech Co., Inc., it was held that an oyster shucker was not covered by the act, the business not being specifically designated hazardous, and the presence of a small gasoline motor used in the plant being considered insufficient to bring the business under the omnibus clause of the Statute.
"In Atkins v. Holsum Cafeteria, it was held that the presence of steam tables, dishwashing machines and cooking ranges in a cafeteria did not render the business hazardous, and plaintiff, a porter and general utility man, required to work `among' such devices, was denied recovery. It is noted further that plaintiff's duties did not require him to operate these devices.
"In Harrington v. Franklin Stores, a colored maid in a mercantile establishment was required to use a steam iron, electrically motivated, and an electric vacuum cleaner, and it was held there that there was no showing that the devices themselves were any more hazardous than those used in modern, up to date homes.
"Brown v. Toler, however, presents a situation where plaintiff's duties were those of clerk in a grocery store and meat market, and required him to occasionally use an electrically powered meat grinder and coffee mill, but who was injured while opening oysters, and the Court found that plaintiff had failed to sustain the burden of proving that his duties required him to operate and to clean these appliances, or that if he did do so, that it constituted a major part of his employment. The decision in that case was based upon a lack of evidence in the record.
"The same Court, in Harrington v. Franklin Stores, supra, has this to say in reviewing the jurisprudence on this point:
"`The operation of a meat market has been held hazardous because it involved the use of an electrically driven meat grinder as an integral part of the business. Stephens for Use and Benefit of Stephens v. Catalano, La. *815 App., 7 So.2d 380. Also Storm v. Johnson, La.App., 23 So.2d 639.'
thereby recognizing the factual distinction between the appliances there under discussion and the established hazardous character of the meat slicer and grinder.
"From the foregoing, we reach the conclusion that while defendant's business is not per se hazardous, there is conducted as a substantial and integral part thereof the meat market business in which the electric machines under discussion are regularly used, and this feature of the `Stop and Shop Store' is hazardous under the omnibus clause found in LSA-R.S. 23:1035. Since plaintiff was regularly and as a daily matter required to actually use and operate these machines, in the absence of the butcher, and also while assisting him during rush hours, he would be entitled to compensation if he was injured even while performing duties as a clerk in the performance of his non-hazardous duties, under the doctrine of Byas v. Hotel Bentley and the later decisions above discussed * * *".
We are fully aware of the fact that the judge below, immediately after the above quoted portion of his written reasons, stated that in his opinion this case presented "a border line situation and were it not for the clear holdings in the Stephens and Storm cases, cited supra, by which we are controlled, this conclusion would have been otherwise." Counsel for defendant placed great emphasis upon the last quoted expression of the lower court and cite many cases including recent cases in an effort to convince this court that our brother below was in error in his ruling that the meat business was conducted as a substantial integral part of the "Stop and Shop" store and in regular and daily use therein were the electric meat slicer and grinder which the plaintiff under his contract of employment as assistant superintendent and clerk was regularly required to actually use and operate during rush hours in order to assist the butcher and during the latter's absence which was daily when he went for his lunch, however, the cases cited are not applicable in that the employees' duties under their contract of employment did not require them to operate regularly and daily such machines as the electric meat slicer and grinder.
This brings us to the second defense and the main one made by defendants, viz., that plaintiff did not sustain an accident within the contemplation of the law. In view of the fact that the lower court has fairly and correctly set forth the facts in the case in his written reasons for judgment we therefore quote therefrom:
"* * * The facts show that on June 19, 1956, while plaintiff was discharging his duties as grocery clerk in the non-hazardous phase of his work, at about one o'clock p. m. during a dull period, he dropped a paper invoice while checking merchandise, and when he stooped down to pick it up he experienced a terrific pain in his back. He was able to rise from the stooping position by pulling himself up on a post, and thereafter worked behind the cash register until 4 p. m., the pain continuing in his back, and when his wife called for him at that time, went to Dr. Comeaux, a physician in Lafayette for an examination then was sent to the hospital.
"Dr. Walter B. Comeaux testified that he examined plaintiff on June 19, found him to be suffering with pain in his right leg and lower back, and on x-ray examination made the following morning found a dislocation and fracture of the 4th lumbar vertebra, with pressure on the spinal cord from the destroyed bone. Dr. Wm. L. Meuleman, orthopedic surgeon, was called in on the case, and subsequently an operation was performed, a section of one of Talbot's ribs removed and a fusion or bone graft made to stabilize that portion of the back. Some of the bone in the region of the fractured vertebra was also removed and studied.
"Dr. Meuleman states that he found plaintiff to be suffering from a destructive *816 type of lesion in the 4th lumbar vertebra, the exact nature of which was undetermined despite extensive clinical and radiological studies which were made by himself and others. As a result of the operation and injury, there is now a marked difference in size of Talbot's legs, the right being smaller than the left.
"The doctor further described the condition of the bone in plaintiff's back at great length. Although no positive diagnosis was made, it was his opinion that the bone was diseased prior to the occurrence of the 19th; during the operation he stated that he could take a probe and push it into the bone itself `like soft butter' (Tr. 46). In response to question by the Court, requesting him to clarify the findings of the pathologists regarding the lesion in plaintiff's back, he said:
"`They all find normal structures on what they visualize. I still feel that sooner or later this man is going to show something very definite, that he has got some sort of cancer somewhere that explains it. It may take weeks or months before it becomes apparent.' (Tr. 41, 42.)
His finding that the degenerative condition of this vertebra existed prior to June 19, is further supported by plaintiff's previous history, which disclosed that plaintiff has had symptoms of tuberculosis of the bone, malignancy, tumor or infection for about 4 months prior to that date. (Tr. 38, 39.) Again'The film studies showed what was described as lytic. What it means is that the bone looks as though something is chewing on it, actively destroying it. Lytic lesion of the inferior aspect of the 4th lumbar vertebra.' (Tr. 35.) (Emphasis supplied.)
"When asked on cross examination whether or not the action of bending to pick up a piece of paper could cause a fracture, the doctor replied affirmatively, qualifying his answer with the words `if there is destruction of the bone underneath.' (Tr. 39.) He further stated that `the lesionthe change in the bone' was not caused by any accident on June 19, but that the fracture was caused by some activity on that day (Tr. p. 42) and that this was an aggravation of the diseased condition (Tr. 43). The doctor also commented, when giving the reasons why he elicited the previous history of plaintiffs' symptoms, thusly: `I might preface this explanationthe x-ray appearance was definitely a destructive type lesion, and furthermore, you don't break backs doing what he was doing, so I suspected, as did Dr. Comeaux, that he had some type of disease, possibly cancerous.' (Tr. p. 28), and that it would have made itself apparent regardless of the occurrence of June 19 when plaintiff picked up a piece of paper. (Tr. 44.)

* * * * * *
"* * * There is no denying that plaintiff's back gave way while at work, and that it was sudden and unexpected, * * *".
In addition to the above summary of Dr. Meuleman's testimony he further testified as follows:
"Q. Doctor. This lytic lesion you saw of the bone, by x-ray, could that have been caused by that episode of picking up a piece of paper June 18? A. No, sir. I felt that this was there, the fracture came after, caused possibly, not by picking up a sack of groceries but the bending and the effort involved in bending and coming erect again.
"Q. If you assume that all he did was pick up a piece of paper, bend down to pick up paper and then felt pain, do you feel that that action could cause a fracture of the lumbar vertebra? A. Yes, if there is destruction of the bone underneath. To my knowledge, I don't believe anybody has ever walked into my office and said, `I have a bone tumor.' However, I can think of a couple of dozen cases. A child throws a baseball, fractures his armyou take an x-ray and see that. Whether that *817 disease is in the upper portion or humerus and has been going on possibly years, the youngster having no complaints, and with the added effort of throwing the ball it fractures. That's actually the way a good many bone tumors are made apparent to the personthey do something trivial and end up with something broken."
Under the above facts plaintiff clearly suffered an accident as defined by LSA-R.S. 23:1021 when he unexpectedly fractured and dislocated the fourth lumbar vertebra of his back suddenly and which at the time produced intense pain and inability to arise without assistance. It matters not that the strain on plaintiff's back brought about when he bent or stooped to pick up the invoice was so gentle or slight that it would not be expected to have brought about the dislocation and fracture of the vertebra in his back, for the compensation act protects the employee who for any reason is usually susceptible to injury and who may be disabled by some event which would be only trivial for the normal worker. See Louisiana Workmen's Compensation Law and Practice by Professor Wex Malone, Ch. 10. The effort and strain produced by the act of plaintiff in bending over to pick up the invoice was the cause of the dislocation and fracture of the diseased fourth lumbar vertebra in his back. It is argued that there is no causal connection between the employment activity in which he was engaged and his present disability. We cannot agree with this argument. Dr. Meuleman very specifically testified that the weakened and diseased vertebra was dislocated and fractured as the result of plaintiff's act in placing a strain or pressure upon his diseased vertebra at the time that he bent over to pick up the invoice. Defendants place too much importance upon the fact that plaintiff was only going to pick up a piece of paper. It would have been the same if he had been going to pick up a cross tie or hammer or any heavy object. In the present case it was necessary as a part of plaintiff's employment for him to retrieve or pick up the piece of paper which was an invoice that he had dropped. Therefore, plaintiff's necessary act in bending over or stopping to retrieve this invoice was the actual employment activity which placed a sufficient strain or pressure on his diseased fourth lumbar vertebra so as to fracture and dislocate it. We therefore definitely hold that there was a direct causal connection between plaintiff's employment activity at the time of his accident and his present disability.
There are many cases in our jurisprudence which sustain our holding in this case that plaintiff suffered an accident and that there was a causal connection between his employment activity at the time and his present disability.
In Roberson v. Michigan Mutual Liability Company, 90 So.2d 465, 466, the Second Circuit Court of Appeal considered a case of a plaintiff who had a heart condition and as a result of physical exertion incidental to his employment duties soon thereafter "expressed himself as feeling bad and experienced some pain in his chest and shortness of breath." He returned to his residence to rest and while eating the evening meal he started, in company with members of his family, to report to the scene, and being unable to drive to the burning residence due to an obstruction in the street, the car was stopped and plaintiff proceeded hurriedly on foot and after walking some distance was stricken suddenly with violent and excruciating pains in his chest and left shoulder. He was unable to proceed further and was returned to his residence, later taken to the hospital and his condition diagnosed as a recent acute myocardial infarct or a coronary thrombosis, from which he died November 18, 1954. The Court found that as manager of the Central Louisiana Electrical Company Plant he was acting in the course and scope of his employment in reporting to the fire. The Court held:
"* * * It appears, therefore that the reasonable preponderance of the medical testimony is to the effect that *818 Roberson's walking hurriedly to the scene of the fire and the stress and strain incidental thereto and connected with his employment due to his already weakened physical condition, precipitated and brought about by the coronary thrombosis which produced his death.
"The jurisprudence is now well settled that, to constitute an accident within the meaning of the Workmen's Compensation Statute in cases where the work of the employee requires physical effort and exertion, it is not necessary that the injury from which disability follows be the result of unusual physical effort if a diseased organ gives way or its function is impaired while the laborer is discharging his usual and customary duties and disability results, for it to be compensable. Jackson v. Travelers' Ins. Co., 180 La. 43, 156 So. 169; Renfrow v. Caddo Parish Police Jury, La.App., 155 So. 291; Biggs v. Libbey-Owens-Ford Glass Co., Inc., La.App., 170 So. 273; Nickelberry v. Ritchie Grocery Co., 196 La. 1011, 200 So. 330; Hill v. J. B. Beaird Corp., La.App., 19 So.2d 295; Dortch v. Louisiana Central Lumber Co., La.App., 30 So.2d 792; Stiles v. International Paper Co., La.App., 39 So.2d 635; Lampkin v. Kent Piling Co., La.App., 34 So.2d 76; Sharp Essor Standard Oil Co., La.App., 72 So.2d 601; Sepulvado v. Mansfield Hardwood Lumber Co., La.App., 75 So.2d 529; Kraemer v. Jahncke Services [Inc.], La.App., 83 So.2d 916, 919. Some of the above, as well as other cases, were reviewed in Kraemer v. Jahncke Services, Inc., supra, wherein it was stated that, while it has been said a heart attack is not an accident within the purview of the Workmen's Compensation Law, LSA-R.S. 23:1021 et seq., yet, if an employee had a pre-existing heart condition which is aggravated by his work, excessive heat, intense hard labor, sudden fright or attack, or any other stress that might aggravate such condition and cause disability or death, such resulting disability or death would be compensable under the statute."
In answering a contention of the defendant that the legal requirements necessary to constitute an action are fulfilled when the facts of a case disclose that many factors such as excessive heat, heavy lifting or straining or excessive exertion have caused or contributed to a physical breakdown or have accelerated its occurrence, the court stated:
"Defendant implies some significance to the words `strenuous', `heavy', and `excessive', as ordinarily found in the decisions of similar cases in referring to an employee's work and under the conditions in which he performs his duties. These terms are relative. They do not possess the same meaning to all persons in all places and under all conditions. Labor that would be strenuous to a person in poor health, who lacked strength, power and endurance, would not necessarily be strenuous to a strong, physically robust laborer in good health. Work that would be termed `light' for a robust laborer may be most strenuous to one who has lost his strength and health through disease. In applying these terms, consideration should be given to the facts and circumstances surrounding a person's activities, particularly as to his health, strength and ability. In Roberson's condition, any labor, however slight, was heavy and strenuous; it was strenuous to himit was sufficiently strenuous to add an additional load to his already diseased heart to bring about the attack of coronary thrombosis, and ultimately his death.
"As further distinguishing the instant case from those relied upon by defendant, plaintiff here has sufficiently *819 established the occurrence of an accident which at least precipitated, brought on or accelerated a heart condition, producing a coronary thrombosis from which her husband died. * * *"
See also Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625; Craft v. Gulf Lumber Co., 151 La. 281, 91 So. 736; Hicks v. Meridian Lumber Co., 152 La. 975, 94 So. 903; Wright v. Louisiana Ice & Utilities Co., 19 La.App. 173, 138 So. 450; Richey v. Union Paving Co., La.App., 151 So. 657; Brister v. Miller, La.App., 178 So. 284; Ozbolt v. Weber-King Mfg. Co., La.App., 193 So. 383; Murray v. Mengel Co., La.App., 9 So.2d 818; O'Connor v. American Automobile Ins. Co., La.App., 32 So.2d 624.
This court in a recent case, Turner v. Southern Industries Company, 88 So.2d 238, 239, held:
"We believe therein the very able District Court fell into error. An aggravation of a latent weakness is a compensable accident, or `the giving way of any portion of the Laborer's body while engaged in his work.' Rivero v. Leaveau, La.App., 45 So.2d 418, at page 422. The jurisprudence is `well settled' that `an injury is compensable where excessive heat, heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition' (many citations), Hemphill v. Tremont Lumber Company, 209 La. 885, 25 So.2d 625, at page 627."
Defendants next contend that the plaintiff is not permanently disabled, basing their contention upon Dr. Meuleman's testimony to the effect that once the fusion site is healed the plaintiff would be able to return as grocery clerk and upon the fact that he expected the healing to occur within three to eight months. As opposed to this is the positive testimony of Dr. Meuleman on the trial of this case on Oct. 24, 1956, that at that time the plaintiff was totally and permanently disabled and no doubt about it. He further stated that there was no improvement objectively in the plaintiff since the surgical procedure of June 27th but that he felt, however, that there was maybe improvement in his physical findings "but it wasn't marked". At another time he was asked: "Doctor, what is Mr. Talbot's prognosis at this time?" "A. To be perfectly honest, I don't know. I can't tell you."
While we feel certain that Dr. Meuleman's testimony is sufficient to prove permanent and total disability, we do have in addition the testimony of plaintiff at the time of the trial that it was necessary for him to use a walking stick as he had no control over his right leg and could not take a step without the brace which he was wearing on the leg at the time. This brace had a spring in it which automatically pushed the leg forward so as to take a step when plaintiff would raise it. He was also wearing a brace around his chest. Plaintiff also stated that he would sit up a short time but spent most of his time in bed and that he was in pain all the time.
There is one other issue which must be decided. It is the contention of counsel for plaintiff that the rate of compensation applicable to this case which plaintiff should receive is $35 per week and $2,500 medical expenses as provided in Act 411 of 1956 which is an amendment to LSA-R.S. 23:1202, and Act 282 of 1956 which amended LSA-R.S. 23:1203. Both of these acts or amendments were approved by the Governor on July 12, 1956, which was approximately three weeks subsequent to plaintiff's accident which occurred on June 19, 1956. The repealing of Act 411 of 1956 merely repealed all laws or parts of laws in conflict or inconsistent herewith. The repealing clause of Act 282 of 1956, now LSA-R.S. 23:1203, merely repeals all laws or parts of laws in conflict *820 herewith. There is no clause or provision in either of these acts giving them retroactive effect and for this reason we are powerless to give them such an effect. It is a sound rule of construction never to consider laws as applicable to cases which arose previous to their passage, unless the Legislature have in express terms declared such to be their intention, however, this general principle or conception applies only to statutes or constitutional provisions effecting substantive rights, and has no application where there is involved a remedial statute or provision which effects not the substantive rights of the party but only the remedies which are to be availed of in the enforcement of those rights. LSA-C.C. Art. 8, Turpin v. His Creditors, 9 Mart., O.S., 562; White v. Brown, 3 Mart., N.S., 17; Fournier v. Landreau, 3 Mart., N.S., 173; Durnford v. Ayme, 3 Mart., N.S., 270; Miller v. Reynolds, 5 Mart., N.S., 665; Dean v. Carnahan, 7 Mart., N.S., 258; Donaldson v. Winter, 1 La. 137; Guidry v. Rees, 7 La. 278; State v. Bermudez, 12 La. 352; Succession of Oyon, 6 Rob. 504, 41 Am.Dec. 273; Succession of Deyraud, 9 Rob. 357; Mechanics' & Traders' Bank v. Richardson, 12 Rob. 596; Saunders v. Carroll, 12 La.Ann. 793; Cassard v. Tracy, 52 La.Ann. 835, 27 So. 368, 49 L.R.A. 272, McGeehan v. Burke, 37 La.Ann. 156; Sample v. Whitaker, 174 La. 245, 140 So. 36; Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 97 A.L.R. 1184; State ex rel. Tulane Homestead Ass'n v. Montgomery, 185 La. 777, 171 So. 28; State v. El Rito Transp. Co., 193 La. 548, 190 So. 803; Shreveport Long Leaf Lumber Co. v. Wilson, 195 La. 814, 197 So. 566; Long v. Northeast Soil Conservation Dist. of La., 226 La. 824, 77 So.2d 408; Devine v. National Life & Accident Ins. Co. of Nashville, Tenn., La.App., 166 So. 522; State ex rel. Huggett v. Montgomery, La.App., 167 So. 147; Geddes & Moss Undertaking & Embalming Co. v. First Nat. Life Ins. Co., La.App., 177 So. 818, affirmed 189 La. 891, 181 So. 436; State v. Spence & Goldstein, La.App., 6 So.2d 102; State v. Alden Mills, La.App., 8 So.2d 98, annulled 202 La. 416, 12 So.2d 204; Jackson v. McEacharn, La.App., 50 So.2d 27; Fouchaux v. Board of Com'rs of Port of New Orleans, La.App., 65 So.2d 430; Oil Well Supply Co. v. Red Iron Drilling Co., 210 La. 222, 26 So.2d 726; General Motors Acceptance Corp. v. Anzelmo, 222 La. 1019, 64 So.2d 417; Washington Nat. Ins. Co. v. McLemore, La.App., 163 So. 773; Young v. Staman, La.App., 220 So. 187; Miller v. City of Shreveport, La.App., 90 So.2d 565.
The final question confronting us is plaintiff's prayer for an additional judgment against the Trinity Universal Insurance Company for 12% penalties and attorney fees under LSA-R.S. 22:658 for the arbitrary and capricious failure to pay compensation due a disabled employee without probable cause. It is admitted in the joint answer filed by James M. Johnson, plaintiff's employer, and the Trinity Universal Insurance Company, insurer of Johnson, that they were notified of the alleged injury to the plaintiff and "have paid no compensation." Defendants have not paid compensation inasmuch as the business of the employer and the duties of the employee were not hazardous * * *" and as a further defense alleged that the trade, business and occupation of the employer Johnson "are not designated as a hazardous business under the workmen's compensation laws of this state, and are not, in fact, hazardous. That the duties of the employee are not hazardous within the contemplation of the workmen's compensation laws of this state and, therefore, the employee is entitled to no compensation of any kind or character."
Under the admitted facts and the well settled jurisprudence previously quoted above herein there is and was no question but that the business and occupation of operating the meat market with its electric slicer and electric meat grinder was hazardous under our compensation act and the *821 established jurisprudence, and the refusal to pay the disabled and injured employee, plaintiff herein on that ground was capricious, unreasonable and without probable cause.
The other defense, viz., that the duties of the employee were not hazardous, and upon which the defendant relies to escape the payment of penalties and attorney fees under LSA-R.S. 22:658 is, under the facts and jurisprudence, equally without merit. Johnson employed the plaintiff in his grocery store as an assistant superintendent whose duties were not only to act as a clerk in the grocery department but he was also required daily to work in the meat market and to use the electric meat grinder and the electric meat slicer. Under the law and long line of settled jurisprudence Johnson and his insurer were charged with the knowledge that plaintiff's duties in the butcher shop were hazardous and entitled him to the payment of compensation if he was accidentally injured while engaged in an employment activity, even though at the time he was not actually engaged in performing any duty connected with the hazardous feature of his employer's business. His employer, Johnson, was in the store at the time of plaintiff's accident and injury and heard him cry out with pain. He knew that he went to the doctor, he was fully appraised of the fact that the x-rays showed a dislocated and fractured fourth lumbar vertebra. The defendant insurer knew or is chargeable with knowledge for the information was available to it of the same facts of which Johnson had knowledge. The failure to pay compensation due to the disabled plaintiff herein was arbitrary and capricious and without probable cause and the plaintiff is therefore entitled to an additional judgment against the defendant insurer. Under LSA-R.S. 23:1141, Gloston v. Coal Operators Cas. Co., La.App., 1 Cir., 85 So.2d 100, Guillory v. Coal Operators Cas. Co., La.App., 1 Cir., 95 So.2d 201, which involved penalties in such cases under LSA-R.S. 22:658, we hereby fix the attorney fees at $1,000.
Plaintiff has proven hospital, nursing, radiology, doctors, and drug bills totalling $1,615.12 and is therefore entitled to the maximum of $1,000 for medical expenses.
It is therefore ordered, adjudged and decreed that the judgment of the lower court be annulled and reversed and that there be judgment in favor of the plaintiff, Emmic J. Talbot, and against the defendants, James M. Johnson, and Trinity Universal Ins. Co., for compensation in the amount of $30 payable weekly with 5% interest on all past due payments from maturity, for a period not to exceed 400 weeks, and judgment in the additional sum of $1,000 for medical expenses, with 5% interest thereon from judicial demand.
It is further ordered, adjudged and decreed that there be additional judgment in favor of the plaintiff Emmic J. Talbot and against the defendant Trinity Universal Insurance Co., in the full sum of $1,000 together with 5% interest thereon from judicial demand together with 12% penalty on all medical and compensation payments now due with a like penalty on all such payments which might become 60 days overdue in the future.
It is further ordered, adjudged and decreed that there be judgment against the defendants for all costs of this proceeding.
LOTTINGER, Judge (dissenting).
This is a suit under the Workmen's Compensation Act brought by Emmic J. Talbot against his employer, James M. Johnson, and his compensation insurer, Trinity Universal Insurance Company. The petitioner sues for permanent and total disability. The Lower Court rendered judgment in favor of the defendants and the petitioner has appealed.
The petitioner claims that he sustained accidental injury to his back on June 19, *822 1956, while within the scope and course of his employment as Assistant Manager of a self-service grocery store operated by the defendant. He claims further that, as a result of the accident, he is now totally and permanently disabled under the compensation act, and seeks to be awarded benefits for such total and permanent disability.
The defendant first filed an exception of no cause or right of action based upon the fact that petitioner sued for increased benefits under Acts 282 and 411 of 1956, whereas the accident occurred prior to the effective date of said Acts, and for the further reason that the petition failed to state a cause or right of action against James M. Johnson because petitioner seeks penalties and attorney fees against Johnson, whereas penalties and attorney fees may be assessed against an insurer. The Lower Court overruled the exceptions, however, they have been again raised before us. The defendant then filed answer, denying that the grocery store operated by defendant Johnson is considered hazardous under the Compensation Act, denying that petitioner received an accident, and that if he did receive an accident that there was no causal connection between the accident and disability, and further denying that the petitioner is totally and permanently disabled.
The Lower Court dismissed the suit on the grounds that petitioner failed to show by a preponderance of the evidence any accident or, if the incident of picking up a piece of paper can be called an accident, then there was no causal connection between the employment activity in which he was engaged and the present disability of which he complains. Under said finding the Lower Court dismissed the suit and the petitioner has appealed. The facts show that petitioner was employed as Assistant Manager of the Stop and Shop self-service grocery store in the city of Lafayette. His duties called for him to help customers entering the store, operate the electric cash register, and to assist the butcher whenever the occasion required. He worked six days a week from 12:00 noon to 4:00 P.M., and from 6:00 P.M. to 11:00 P.M. At times petitioner operated a meat grinder and meat slicer in the butcher shop, which was operated in conjunction with the store. Most of the petitioner's time was devoted to waiting on customers, putting up merchandise, operating the cash register, and generally keeping things in order.
The facts show that on June 19, 1956, while petitioner was checking merchandise on the shelves of the store, he dropped a paper invoice, and when he stooped to pick it up, he experienced a terrific pain in his back. He was able to raise himself up, after a short interval, by pulling himself up on a post. The incident occurred at about 1:00 o'clock P.M. just about one hour after he had gone to work; petitioner continued working behind the cash register until 4:00 P.M. when his wife picked him up. He had complained of pain in his back all afternoon, and his wife drove him to the office of Dr. Walter B. Comeaux for examination. Dr. Comeaux testified that he found petitioner suffering with pain in his right leg and lower back, and placed him in the hospital immediately. An x-ray examination made the following morning showed a dislocation and fracture of the 4th lumbar vertebra with pressure on the spinal cord from the destroyed bone.
Dr. Comeaux called in Dr. William L. Meuleman, an orthopedic surgeon, and subsequently an operation was performed, wherein a part of one of petitioner's ribs was removed and a bone graft made to replace a portion of the fractured vertebra which was also removed. The petitioner remained in the hospital some 25 days and returned home. There is no question but that he is totally and permanently disabled at the present.
Due to the nature of my findings, I will first consider the question as to whether or not petitioner sustained an accident, and if so, was there any causal connection *823 between the accident and the disability now complained of. The question therefore is whether petitioner sustained an accident within the scope of his employment, as is required by the Louisana Compensation Act.
The Compensation Act, in LSA-R.S. 23:1021, describes an accident as "`Accident' means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and produces at the time objective symptoms of an injury."
LSA-R.S. 23:1031 requires that an employee receive "* * * personal injury by accident arising out of and in the course of his employment * * *." There is no question but that the incident occurred during the course of employment, but the question is whether or not there was an accident arising out of his employment, and if so, was there a causal connection between the accident and the disability.
Dr. Comeaux is a general practitioner and called Dr. Meuleman, an orthopedic surgeon, into the case. Dr. Meuleman testified that the x-rays showed a disease process of the 4th lumbar vertebra. During the operation a portion of the vertebra was removed and the removed portion was replaced by a portion of rib which was also removed from petitioner. Dr. Meuleman stated that during the procedure a certain portion of the vertebra was found to be lytic, which he described as "* * * something had been chewing on the bone, actively destroying it * * *." Although no definite conclusions had been determined. Dr. Meuleman stated that he felt the condition as a result of some type of disease, possibly cancer.
On cross-examination Dr. Meuleman answered that the action of bending to pick up a piece of paper could cause a fracture, however, he qualified his answer with the condition "* * * if there is destruction of the bone underneath * * *." He stated that the x-ray's appearance was definitely a destructive type lesion, and furthermore, "* * * you don't break backs doing what he was doing * * *." Dr. Meuleman testified that the bone which was removed was quite soft, and that it could be pushed into very easily, like "soft butter". He said that the bone in that area was "* * * what we call cancellous, it is sort of like a spidery web, interspaces, porous, and in these interspaces there were little hill-type materialnormal bone does not have that * * *."
Dr. Meuleman stated that petitioner gave a history of having pain in the back portion of his right shoulder for a period of some four months prior to the alleged accident. He had seen Dr. Chastant, who was unable to give a good explanation of the pain. The history further showed that for some months prior to the alleged accident petitioner had pain in the small portion of the back, which was particularly apparent when he cooled off or stopped working, and was just sitting around. On occasions petitioner would awaken during the night with sharp, stabbing type pains in the back, and would wake up on occasions sweating. Dr. Meuleman stated that night sweats are important because tuberculosis of the bone will cause people to perspire profusely at night. From the history and x-ray, as well as the examinations, Dr. Meuleman felt that petitioner had possibly cancer of the bone, or possibly infection, such as tuberculosis, prior to the accident. Dr. Meuleman stated that the lesion, the decay in the bone, occurred prior to the alleged accident, and that the diseased condition would have made itself apparent regardless of the occurrence of June 19, when petitioner picked up a piece of paper.
The Lower Court concluded that the cause of petitioner's condition was not any activity in which he was engaged by reason of his employment, but that the vertebra gave way as a result of the disease from which he was suffering, which disease would have made itself apparent regardless of his actions of June 19. In *824 reaching the said conclusion the Lower Court said:
"The Court has reached the conclusion that the cause of plaintiff's condition was not any activity in which he was engaged by reason of his employment. The fact that the fourth lumbar vertebra gave way when he stopped to pick up a piece of paper was the result, not of the work he was doing, but of the disease from which he was suffering, which disease would have made itself apparent regardless of his actions on June 19.
"This case is governed by the well settled and frequently announced rule that the Compensation Statute limiting accidents to those arising out of and in the course of employment, was to protect the employer against the possibility of becoming a mere insurer of his employee. Kraemer v. Jakncke Services [La.App.], 83 So.2d 916; Siscoe v. Cooley [La.App.], 9 So.2d 313; Kirk v. E. L. Bruce Company [La.App.], 190 So. 840, and other cases cited therein. The Court recognizes the distinction which lies between these cases and the usual case of back strain or injury, and that they are distinguishable from the instant case in that they involved diseases of the heart. The underlying principle, however, is the same. There is no denying that plaintiff's back gave way while at work, and that it was sudden and unexpected, but the nature and extent of the collapse cannot, in my opinion, be attributed to his employment or to an `accident' as defined by the law. It was only coincidence that the manifestation of the disease occurred while he was at work.
"The Court is of the opinion that plaintiff has failed to show by a preponderance of the evidence any `accident' or, if the incident of picking up a piece of paper can be called an accident, then there is no causal connection between the employment activity in which he was engaged, and the present disability of which he complains. Judgment is, therefore, rendered against him, rejecting his demands at his costs."
I agree with the conclusions of the Lower Court. The evidence shows without contradiction that the petitioner had suffered pain in his back and shoulder for some time prior to the incident of June 19. The medical testimony shows without question that petitioner's disability is due directly to a diseased condition of the bone, which existed prior to the time of accident. Although the condition manifested itself at the time petitioner stooped to pick up the paper, I feel that the testimony of Dr. Meuleman is to the effect that this condition would have become apparent regardless of the motion of stooping. As a matter of fact, it had manifested itself on several occasions prior to the alleged accident while petitioner was home asleep in bed.
Both plaintiff and defendant have cited us the case of Dortch v. Louisiana Central Lumber Co., La.App., 30 So.2d 792, 796, wherein Judge Taliaferro made the following observation:
"It is now well settled that to constitute an accident within the meaning of the Workmen's Compensation Law in cases where the work of the claimant entails regularly heavy physical effort, it is not necessary that the injury from which disability follows be the result of unusual physical effort. If a diseased organ gives way while the laborer is performing his usual and customary heavy duties, and disability results, it is compensable. * * *" (Italics mine.)
I have no quarrel with this rule, however, I do not see where the plaintiff can obtain any comfort from same. It is clear that this rule applies only where there is a physical breakdown while the employee is performing "his usual and customary *825 heavy duties." It certainly cannot be said in the case at bar that the plaintiff was performing his usual and customary heavy duties when he just stooped to pick up a piece of paper and his back gave way. There was no heavy physical effort involved there. Plaintiff might have had a compensable claim if the evidence as to the work engaged in disclosed it to be sufficiently strenuous, or of such a nature that, combined with the other facts (pre-existing disease or predisposition to attack) that it raised a natural inference through human experience that it did so contribute, but that is not present in the case at bar. "It should never be forgotten that, no matter how far the accident definition is relaxed, or deleted altogether for that matter, the independent requirement remains of demonstrating that the injury arose out of the employment." Larson's Workmen's Compensation Law, 38.83, page 564. Again Larson states in the same section on page 565:
"There must still be an unexpected result, and there must still be an exertionsome exertioncapable medically of causing the collapse. This can by no means be taken for granted. If heart failure overtakes the employee while he is merely waiting for a bus or an elevator, you simply have no strain at all to provide an accidental result of employment activity. The natural progress of the disease may bring it to its fatal climax during working hours, but if the employee's activity at the time involves no effort, or effort which cannot support medically a causal connection, it can be rightly said that the outcome was neither accidental nor causally related to the employment."
To sustain an award in this case would necessitate opening the floodgates and holding that every internal failure suffered by an employee in the course of his employment becomes an accident just because it happens. For the above and foregoing reasons I concur in the opinion of the Lower Court that plaintiff's back gave way when he stooped to pick up the piece of paper not as a result of the work he was doing but as a result of the disease he was suffering.
For these reasons I respectfully dissent from the majority.
Rehearing denied; LOTTINGER, J., dissenting.